## O. P. SAUNDERS v. S. M. GOULD.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

121  237,
131  460.

Argued January 22, 1889—Decided February 18, 1889.

1. Where properties sold at sheriff's sale are bid off by the attorney of the execution defendant, in good faith and for the protection of the latter's interests, and to that end an arrangement is made and carried out with a third person who advances the purchase money and takes the sheriff's deeds to himself, under an agreement that the defendant may re-purchase the properties, the transaction is valid and will operate to discharge liens and pass a good title to the sheriff's grantee.

2. If, in such case, the judgment upon which the sales were made had in fact been paid in full out of the proceeds of other property sold at a prior sale, yet if the records remained open and unsatisfied, disclosing valid judgments and executions, the knowledge which the defendant's attorney had of the actual facts would not of itself affect with notice thereof the sheriff's grantee who advanced the purchase money upon taking the attorney's bid.

3. Moreover, even if the transaction under which the third person advanced the purchase money, received the sheriff's deeds and executed the agreement that the execution defendant should re-purchase the properties, constituted but an unrecorded mortgage, yet if before any new lien is entered against the defendant he deliver a quit-claim deed to the sheriff's grantee, the latter's title will remain unaffected by a subsequent sale on such new lien.

Before PAXSON, C. J., STERRETT, CLARK, McCOLLUM and MITCHELL, JJ.

No. 170 July Term 1888, Sup. Ct.; court below, No. 41 September Term 1883, C. P. No. 1.

On August 4, 1883, an action of ejectment was brought by Samuel M. Gould against Oscar P. Saunders to recover two houses and lots, to wit, No. 928 South Fifth street, and No. 635 Lombard street, Philadelphia, with notice of claim for mesne profits. Issue.

At the trial on February 1, 1886, the essential facts made to appear were as follows:

On October 14, 1872, by deed in partition proceedings, C.

W. Hepburn became the sole owner of the properties in dispute and other properties, one of them on Sixteenth street, subject to the following liens:

1. Mortgage of W. L. Brown, $6,000; October 19, 1868.

2. Judgment of James Allen, $500; October 25, 1868.

3. Judgment of J. A. Simpson, $650; July 21, 1869.

4. Mortgage and judgment to Silas Betts, $1,200; January 3, 1870.

5. Judgment of J. A. Simpson, $500; March 8, 1870.

6. Judgment on Brown mortgage, No. 1, July 18, 1870.

In December, 1872, the property on Sixteenth street was sold at sheriff's sale upon a writ from the Simpson judgment, No. 5, for $2,500, and of the purchase money the sheriff paid to the Allen and Simpson judgments, Nos. 1 and 2, the debt, interest and costs in full.

In February, 1873, at a sheriff's sale upon a writ issued from same judgment, No. 928 South Fifth street was knocked down to H. F. Hepburn; and in April, 1873, at a sheriff's sale upon a writ issued from the Brown judgment, No. 6, No. 635 Lombard street was also knocked down to H. F. Hepburn; but in both cases, the properties were returned as sold to Samuel M. Gould, the plaintiff, and sheriff's deeds executed and delivered to him.

The properties in dispute were occupied by tenants, and the rents were collected by C. W. Hepburn until in May 26, 1874. After that date and until March 1883, the plaintiff received the rents and was in control.

In December, 1879, the judgment on the bond accompanying the Betts mortgage, No. 4, was revived, and in 1882 an execution was issued and levy made upon both the properties in dispute. Then Mr. Gould filed a bill in equity for a decree that he held the properties described freed and discharged from the Betts mortgage and judgment, and to restrain the plaintiff in that execution from proceeding to a sale of the same. In this bill the plaintiff set out the ownership of the properties by C. W. Hepburn, subject to the liens as hereinbefore stated; the sale of the Sixteenth street property in December, 1872, and the application of the purchase money; the sales of the properties in dispute in February and April, 1873, and that they had been bid off by H. F. Hepburn, as attorney of the

execution defendant; that at the request of H. F. Hepburn and C. W. Hepburn, he had agreed to loan C. W. Hepburn $4,000, and on the same day paid $2,000, and on June 2, 1873, the remaining $2,000; that these loans were secured by having the sheriff make the deeds for the two properties directly to him; that the loans were to be repaid in five months, and various attempts to repay them having failed, on May 26, 1874, C. W. Hepburn executed and delivered a quit-claim to him for all his interest in the properties. The plaintiff in this bill filed also an injunction affidavit setting forth the same facts.

The injunction prayed for in the bill was refused, and in February, 1883, at the sheriff's sale which followed, the plaintiff gave notice that C. W. Hepburn had no interest in the properties to be sold, of the bill in equity which he had filed and its prayers upon the equities therein set forth, and that a purchaser would acquire no title whatever, but would take subject to all said equities. The plaintiff himself bid at the sale, but the properties were knocked down to O. P. Saunders, the defendant herein, to whom the sheriff's deeds were acknowledged and delivered and who went into possession. Mr. Saunders was then made a party to the equity proceedings, but the bill was finally dismissed, when the plaintiff brought this ejectment.

The defendant, in the trial of this case, put in evidence the sheriff's deeds to himself made in 1883 for the property in dispute and called H. F. Hepburn who testified in substance that he had bought in the properties at the sheriff's sale in 1873 as the attorney for C. W. Hepburn; that he then arranged with Mr. Gould to raise money on them and that Mr. Gould should hold the titles until C. W. Hepburn could repay the money; that Mr. Gould having had the deeds made in his own name, advanced the purchase money, and the witness had paid it into the sheriff's hands to be applied to the liens upon it, and Mr. Gould had made an agreement in writing to the effect that he was to hold the properties for C. W. Hepburn and convey them to such persons as he might select, on the repayment of his money with a certain interest; that the transaction was entirely a loan, and C. W. Hepburn knew of it from beginning to the end, "and that there was nothing dishonest about it so far as Charles W. Hepburn was concerned."

The plaintiff testified in substance that the facts set out in his bill in equity and injunction affidavit were incorrectly stated therein; that he did not loan money upon the properties, but bought them absolutely for $4,000 from H. F. Hepburn, who had bid them off at sheriff's sale; that shortly afterwards, H. F. Hepburn came to him saying that he was the attorney of C. W. Hepburn, the former owner of the properties, who was soon to receive a large sum of money, and as soon as he received it he would like to purchase the properties back, and would pay $2,000 more than he, Mr. Gould, had paid for them; that he agreed to this and September, 1873, was fixed as the time for payment; that the time was then extended to November, and again to December, 1873; that still more time was given and finally on May 26, 1874, C. W. Hepburn having failed altogether, he executed quit-claims to the plaintiff for all his interest and claim in the properties.

When the case closed upon the evidence of which the foregoing is an outline, the defendant moved the court to strike out of the testimony and withdraw from the jury all evidence of any title to the properties in dispute in the plaintiff, other than the title of which he gave notice at the sheriff's sale at which the defendant bought.

By the court: Motion refused.[1]

The court, BIDDLE, J., charged the jury as follows:

I am very sorry that the first case that you have been called on to try has been so protracted an one, and necessarily so tedious to you because most of the questions involved in it are questions of law which I have to decide and not questions of fact which you have to decide. I will endeavor in as few words as I can to call your attention to the points which belong to your province. This action is brought by the plaintiff, Mr. Gould, to obtain possession of two pieces of property, one No. 928 South Fifth street and the other No. 635 Lombard street. These properties were owned by Charles W. Hepburn, Jr. There were two judgments which were liens upon the property, one of $650 and the other of $500. Subsequently to these there was a mortgage for $1,200, which has been called the Betts mortgage, and subsequent to that there was another judgment held by Mr. William Brown. On two of these judg-

ments both of these properties were sold to Henry F. Hepburn, attorney. Now these sheriff's sales, if they were made in good faith to a third party, would throw all these incumbrances out and give a perfect, good title to the purchaser. They were, however, bought at this sale by Mr. Charles W. Hepburn, the very man upon whose land they were incumbrances. He permitted the sale and bought them in when they were knocked down by the sheriff. In a case of that kind they do not discharge the incumbrances on the land, but the title he acquires is for the benefit of his creditors. When, then, he bought those two properties, as the first two judgments had been paid, he still held it subject to the Betts mortgage. Subsequently this property he either sold or mortgaged to Mr. Gould, the plaintiff here, but if he had either actual or constructive notice of these facts he stands in no better position than Charles W. Hepburn, and the sale under the Betts mortgage has divested his title to this property.

On January 12, 1883, this identical gentleman in this court swore that on April 19, 1873, at the urgent solicitation of the said Henry F. Hepburn and Charles W. Hepburn, he agreed to loan to the said Charles W. Hepburn the sum of $4,000, and on the same day paid to the said Henry F. Hepburn the sum of $2,000, and the balance thereof on June 22, 1873. That he swore was the transaction at that time, two years ago. At present he swears that he bought this property of Henry F. Hepburn and had nothing to do with Charles W. Hepburn in the business. Now being confronted with that affidavit in this case and asked what it meant, that a man could swear to facts so utterly inconsistent, he has explained that that was done by his lawyer who drew up the affidavit. There are some things, gentlemen, which a lawyer does for you for which you are not responsible, and it would be very unreasonable to hold you responsible. You do not draw up what are called the pleadings, the papers in a case which are filed in the office; and you do not select what mode or what kind of suit your lawyer is going to bring; that is a matter of discretion. But did any one ever hear that when you are required to make an affidavit of the facts in a case, you are at liberty to perjure yourself because the lawyer wrote the affidavit? Now it may be perhaps in order to take every reasonable view of the case,

that a man may have signed something drawn up by another which he did not intend to. In this case we are met with this further fact: the affidavit was made on January 12, 1883, and the application for an injunction was made on this very court two weeks afterwards, on January 24, 1883, in the presence of this very gentleman, and it was read to the court, and this court was asked to grant an injunction on the truth of that affidavit which he now swears was false. Now, this statement that he then made is corroborated by Mr. Hepburn as precisely correct, as what did occur at that time, and Mr. Simpson, the lawyer of this gentleman, testified that he wrote this paper at his dictation; that he knew nothing of the facts of the case; the facts were given to him by his client, and were sworn to by the client and not by him.

Now if he knew that this property had been sold as the property of Charles W. Hepburn and also knew that it had been bought in by Charles W. Hepburn and that his attorney was trying to sell it, these circumstances should have put him upon inquiry to discover exactly what he was buying and what were the circumstances surrounding the case, and he would at once have learned that Charles W. Hepburn was the purchaser and that the purchase by him would not divest these liens upon the property, although they were sold under incumbrances which were prior to them in date, and at the very time that he bought these properties, when he was asked yesterday how it was that when he bought them in 1873 he did not go into possession until 1874, he says, "I have given a consent, a tacit consent that Charles W. Hepburn might have the rents till the 19th of September, 1873, and I, by the manoeuvring of his counsel, did not get possession till 1874, and did not collect the rents till that time." So that in addition to what he consented to in 1873 he also tells us here that he allows this Charles W. Hepburn, with whom he said he had no connection whatever, to keep possession of the property and collect the rents.

Neither could any quit-claim deed given under these circumstances by C. W. Hepburn benefit him. Any title which he could give after the sheriff's sale to him, would still be subject to the Betts mortgage. Under the Betts mortgage both these properties were sold to the defendant in this suit. It is, how-

ever, contended by the plaintiff that the Betts mortgage did
not cover the property 635 Lombard street, because two of the
parties who had once owned it had released it from the lien of
the mortgage.   This they had the power to do if they had a
power to do it absolutely, or if, while holding the legal title,
it was an honest transaction.   It is, however, contended here
on the part of the defendant, that Mr. Smithers, who signed
one release only, held it as collateral security, in which case he
could not release the property; and that Mrs. Brooker, who
was an administratrix, released it fraudulently and without any
consideration whatever.   If you find this to be so, it would
not release the property, but would leave this property still
subject to the Betts mortgage.   In regard, then, to the house
No. 928 South Fifth street, the purchase at the sheriff's sale by
Charles W. Hepburn, did not divest the incumbrances existing
on the property, and if Mr. Gould was by the circumstances of
the case of which I have spoken put upon inquiry, and knew,
or was quite cognizant of the facts, he stands in no better posi-
tion than Charles W. Hepburn.   As to the property, No. 635
Lombard street, if you should think that the releases were not
fraudulent, your verdict as to them should be for the plaintiff.
If they were fraudulent, either through design or defect of
power to release, your verdict should be for the defendant also
for that property.   If you find for the plaintiff, he is of course
entitled to the damages of the rents or yearly value in this
property during the time of which he was kept out of posses-
sion.   If you should find, however, for the defendant in this
case, of course there would be no question of damages for you
to consider.

But the main point of the case, as I have said to you, was
the knowledge of Mr. Gould of the whole of this transaction—
the whole of this arrangement by which the property of
Charles W. Hepburn should be put out of the reach of these
incumbrances upon his property.

The defendant asks the court to instruct the jury:

1. The record showing that all judgments and claims ahead
of the Betts judgment and mortgage amounted to but $1,150,
and the judgment under which 928 South Fifth street was sold,
showing that a previous execution had realized $2,500, more
than double the amount necessary to pay these prior judg-

Charge of Court below.

ments, any purchaser at the sale of February 3, 1873, under that judgment, was put upon his inquiry to such an extent that inquiry became a duty, and inquiry would have furnished the purchaser with the knowledge that all prior judgments had been paid, debt, interest and costs, and that the lien of the Betts mortgage and judgment were not discharged by this sale and that the purchaser would take subject to them.

Answer: I refuse to so charge, except as answered in the general charge.[6]

9. As plaintiff dealt directly with Chas. W. Hepburn and his attorney, in this mortgage transaction, and knew that Charles W. Hepburn was the owner of the properties both before and after the sheriff's sales, he was put upon inquiry as to the incipiency of Charles W. Hepburn's title, and is bound with notice of the fact that all judgments and claims prior to the Betts judgment and mortgage had been paid, debt, interest and costs, and that the Betts judgment and mortgage had not been divested.

Answer: I refuse to so charge, except as answered in the general charge.[7]

13. That an absolute conveyance with a separate defeasance, the former being recorded and the latter not, is an unrecorded mortgage, which is good for nothing as a conveyance because it is in fact not a conveyance, and is equally· worthless as a mortgage because it does not appear by the record to be a mortgage.

Answer: I refuse to so charge, except as answered in the general charge.[8]

14. That an absolute conveyance with a separate defeasance, the former recorded and the latter not, is a mortgage unrecorded; it gives no rights as against any creditor of the mortgagor whose debt was contracted before notice was obtained or the transaction took place.

Answer: I refuse to so charge, except as answered in the general charge.[9]

18. As plaintiff acted in the mortgage transaction through Henry F. Hepburn (who had been his attorney in other matters), as his attorney or adviser, and as Henry F. Hepburn knew at the time of the said sales, that all judgments and claims prior to the Betts judgment and mortgage had been

actually paid, debt, interest and costs, and that the sheriff's sales of February 3 and April 7, 1873, had been procured or suffered by Charles W. Hepburn to take place, plaintiff is also affected with notice of these facts, and that the Betts judgment and mortgage had not been divested.

Answer: I refuse to so charge, except as answered in the general charge.[10]

19½. That upon the conveyances and proceedings in court, and other papers offered in evidence, the plaintiff is estopped from setting up the title offered in evidence by him, and upon which he claims to recover the premises described in the writ.

Answer: I refuse to so charge, except as answered in the general charge.[11]

20. Under the evidence, the judgment should be for the defendant.

Answer: I refuse to so charge.[12]

The jury returned a verdict for the plaintiff for the properties described in the writs, and for $1,768, as mesne profits. A rule for a new trial having been discharged, on July 1, 1886, judgment was entered upon the verdict. On July 21, 1886, writs of habere facias and fieri facias issued, and the plaintiff was put into possession. On June 29, 1888, the defendant took this writ assigning as error, inter alia:

1. The refusal of the defendant's motion.[1]

6–10. The answers to the defendant's points.[6 to 10]

11. The answer to defendant's point.[11]

12. The answer to defendant's point.[12]

*Mr. Bradbury Bedell,* for the plaintiff in error:

1. One who gives notice at a sheriff's sale as to his title to a property, invites the purchaser into a contest for the property upon that title and no other. He is estopped from setting up another title against the purchaser, even if he can prove another valid in law under different circumstances: Eshbach v. Zimmerman, 2 Pa. 313, 316; Brown v. Bank of Chambersburg, 3 Pa. 187, 202. The correctness of these decisions has never been questioned.

2. The defendant in the execution, and his attorney who bought at the sale of February, 1873, had actual knowledge

that the two judgments prior to the Betts judgment and mortgage had already been paid in full out of the proceeds of the sale of other property, and that the lien of the Betts mortgage and judgment was not discharged by the sale. The records disclosed the facts stated. Whatever puts a party on inquiry amounts to notice, provided the inquiry becomes a duty, as it always is with a purchaser, and would lead to the discovery of the requisite facts by the exercise of ordinary diligence and understanding: Hill v. Epley, 31 Pa. 331; McCandless v. Blakely, 12 W. N. 510; Magaw v. Garrett, 25 Pa. 319; Beidelman v. Foulk, 5 W. 308. It is undisputed that C. W. Hepburn was the owner of the properties before the sale, procured the sale to be made, had the properties bought in for himself, and with him and his attorney the plaintiff dealt. But the plaintiff could not so deal without being put upon notice as to the title, and he would then have learned that C. W. Hepburn was the owner before the sheriff's sale and after it; in fact that the title had never been out of him, but that the property was still encumbered by whatever was against it prior to the sales: Mullison's Estate, 68 Pa. 212; Jones on Mortgages, §§ 679, 680; Woodburn v. Bank, 5 W. & S. 448; Taylor v. Smith, 2 Wh. 432, 436; Clark v. Martin, 49 Pa. 303.

3. An absolute conveyance with a separate defeasance, the former being recorded, the latter not, is an unrecorded mortgage, which is good for nothing as a conveyance, because in fact it is not a conveyance, and is equally worthless as the mortgage, because it does not appear of record that it is a mortgage: Hendrickson's App., 24 Pa. 363; Friedley v. Hamilton, 17 S. & R. 70. And as the plaintiff acted in the mortgage transaction through H. F. Hepburn, who knew at the time of said sales that all the judgments and claims prior to the Betts mortgage and judgment had been actually paid in full, and that the sheriff's sales of February and April, 1873, had been procured to take place by C. W. Hepburn, the plaintiff was affected with notice of these facts, and that the Betts mortgage and judgment had not been divested: Le Neve v. Le Neve, 2 L. C. in Eq. 135; Barnes v. McClinton, 3 P. & W. 67.

*Mr. John Scollay*, for the defendant in error:

1. The sale under which the plaintiff bought the Lombard street property was under a bond secured by a mortgage which was a first mortgage lien on the property. The sale on the bond was as if under the mortgage itself: McCall v. Lenox, 9 S. & R. 302; Clarke v. Stanley, 10 Pa. 472. Hence the defendant, who bought under the Betts mortgage, which was subsequent to the one under which the plaintiff bought, took no title, for the Betts mortgage had been divested by the prior sale.

2. The defendant, therefore, sought to show that the plaintiff's purchase was merely a mortgage, to do which he had but one witness against the plaintiff's deeds from the sheriff, the quit-claim from C. W. Hepburn, and his possession for nearly ten years. In order to convert a deed absolute on its face into a mortgage. the evidence must be clear, explicit and unequivocal, and the burden of proof is upon the party who alleges it was a mortgage: Plumer v. Guthrie, 76 Pa. 441; Stoever v. Stoever, 9 S. & R. 454; Baisch v. Oakeley, 68 Pa. 92; Thomson's App., 70 Pa. 434; Todd v. Campbell, 32 Pa. 254; Spering's App., 60 Pa. 199; Nicolls v. McDonald, 101 Pa. 514; Burger v. Dankel, 100 Pa. 113; Huoncker v. Merkey, 102 Pa. 462. Even subsequent admissions that a deed absolute is a mortgage in reality or a resulting trust, are insufficient: Churcher v. Guernsey, 39 Pa. 84.

3. It is undisputed that the plaintiff paid his own money, that none of the purchase money was paid by any one else, and that no part of the consideration moved from C. W. Hepburn to the plaintiff. A promise to purchase at a sheriff's sale for the benefit of the defendant in the execution, will not constitute the purchaser or his vendee a trustee for the benefit of the execution defendant, unless the purchase was made with the defendant's money, even though the purchaser has agreed to convey back to defendant on the payment of a certain price: Jackman v. Ringland, 4 W. & S. 149; Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 165; Fox v. Heffner, 1 W. & S. 372.

4. Moreover, the Betts judgment was revived without notice to the plaintiff as terre-tenant and not until more than five years after his title had been running. It is essential in order to continue the lien of a judgment on land sold and conveyed,

that the terre-tenant be made a party or have due notice of the scire facias: Act of April 4, 1798, §§ 2, 3, 3 Sm. L. 331; act of April 16, 1849, § 8, P. L. 664; Lusk v. Davidson, 3 P. & W. 229; Brown v. Simpson, 2 W. 233; Davis v. Ehrman, 20 Pa. 256; Fickes's App., 71 Pa. 447. And again; a bona fide purchaser, without notice is not affected by notice to his vendor: Bond v. Stroup, 3 Binn. 66. A purchaser from a sheriff's vendee is not affected with notice of a parol agreement made between the sheriff's vendee and the defendant in the execution, to re-sell to the defendant; he can be affected only by fraud in obtaining the title: Kellum v. Smith, 33 Pa. 158; nor with notice of the fact that his vendor was the attorney in the execution under which the property was sold, the record showing that fact: Barlow v. Beall, 20 Pa. 178.

5. But it is claimed that the South Fifth street property was sold to the plaintiff under a fieri facias on a judgment that was later in date than two others which had been paid, but which fact did not appear of record. The lien index docket or judgment index docket, however, is all a purchaser is bound to look to: Act of March 29, 1827, § 3, 9 Sm. L. 319; Bear v. Patterson, 3 W. & S. 233; Mehaffy's App., 7 W. & S. 200; Ridgway's App., 15 Pa. 177; Polhemus's App., 32 Pa. 328; Magaw v. Garrett, 25 Pa. 319; Goepp v. Gartnery, 35 Pa. 133.

OPINION, MR. JUSTICE CLARK:

It is conceded that in January, 1873, the title to the premises in dispute, being No. 928 South Fifth street, and No. 635 Lombard street, in the city of Philadelphia, was in Charles W. Hepburn; that in the month of February, 1873, the former, and in April following, the latter, was sold at sheriff's sale as the property of Hepburn, and both were struck down to Henry F. Hepburn who says he purchased them in the interest of Charles W. Hepburn, for whom he was acting as an attorney. As to the legal effect of these sales, the learned judge of the court below instructed the jury, as follows: "Now these sheriff's sales, if they were made in good faith to a third party, would throw all these incumbrances out, and give a perfect good title to the purchaser. They were, however, bought at this sale by Mr. Charles W. Hepburn, the very man upon whose

land they were incumbrances. He permitted the sale, and bought them in when they were knocked down by the sheriff; in a case of that kind they do not discharge the incumbrances on the land, but the title he acquires is for the benefit of his creditors," etc. This portion of the charge we think results from a misconception of the case presented by the facts which are uncontradicted or admitted. It will be conceded of course that if Charles W. Hepburn himself had purchased at these sales, or Henry F. Hepburn, his attorney, had purchased for him, in his name and using his money for payment of the purchase money, the title would have been unaffected, and the liens undisturbed thereby. But that is not this case, as we understand it. The charge in this respect was much more favorable to the plaintiff in error than he deserved.

There is no charge of fraud or unfairness in the sale ; it was regularly conducted, and was open to all. Whilst Henry F. Hepburn purchased the property, in the interest of his client, the evidence is wholly to the effect that he purchased in his own name and upon his own responsibility, for the purpose of securing the title to himself, free from all liens, so that he might sell one property at a time at a fair value, to prevent sacrifice. He was called as a witness by the plaintiff in error, and testified "there was nothing dishonest about it so far as Charles W. Hepburn was concerned." The interest of Charles W. Hepburn was to be promoted by a re-sale or pledge of the property by Henry F. Hepburn, who, apart from the strict line of his professional duty, voluntarily assumed the responsibility and undertook to aid his client in this way. He says the reason he made the purchase in his own name, was to secure the money which he was obliged to advance in order to get the titles from the sheriff, and that he subsequently turned them over to Gould for the purpose of raising the money to pay the sheriff ; to get the money by placing the property in the hands of bona fide purchasers. That this was a perfectly legitimate transaction cannot be questioned. That he was acting in the interest of Charles W. Hepburn he admits, but the sale was open to all, and was not under his control. He stood on the same plane with the creditors, who had a perfect right to and probably did compete with him in the biddings. Under these circumstances, he had a right to bid and buy, and

a right to be secure in his purchase, and to be protected in the purchase-money which he obligated himself to pay. There was at the time, it is true, a confidential relation existing between himself and Chas. W. Hepburn, his client. If he had taken advantage of that relation to obtain the title, and subsequently abused the confidence reposed in him by his client, the law might perhaps have affected him with a constructive trust ex maleficio, but he did not abuse it, and no trust of that character arose.

But instead of taking the deed in his own name, Henry F. Hepburn, in furtherance of the original design, entered into an arrangement of some kind with Gould, by the terms of which, upon payment to him of from $3,600 to $4,000, Gould's name was substituted in the sheriff's return, and, the purchase-money having been paid to the sheriff out of the money received from Gould, the sheriff's deeds to Gould were executed, acknowledged, and delivered. Under such circumstances, we think the judgments and all liens subsequent to those effecting the sale, were discharged. Henry F. Hepburn was a good-faith bidder, at a regular sheriff's sale, and creditors, and others in interest, had full opportunity to protect their interests, if they chose to do so. There was no obligation on the part of Henry F. Hepburn to buy the property, or to incur the responsibility which he assumed, but if he or any other person chose to do so, it was in no sense an unlawful act on his or their part.

The judgments upon which the sales were effected were open and unsatisfied; the record disclosed a valid judgment and a regular execution; if the proceeds of the Sixteenth street property had been previously applied in payment of the Simpson judgment, the record did not show it. Assuming that Henry F. Hepburn knew or had the means of knowing, that the money had been so applied, there is no evidence that Gould had any knowledge of that fact, and the state of the record was not such, we think, as to put him upon inquiry. Whilst a purchaser at a sheriff's sale with knowledge that the judgment upon which the sale is effected has been paid, may acquire no title, it has been held to be otherwise with respect to a bona fide purchaser from him without notice: Hoffman v. Strohecker, 7 W. 86; Gibbs v. Neely, 7 W. 305. If, there-

fore, the transaction between Henry F. Hepburn and Samuel Gould was an absolute sale, upon the consideration stated, as Gould says it was, and as the deed declares, he took a good title, and would have a clear right to recover in this case.

But it is alleged, on the part of the plaintiff in error, that the deed to Gould was only a security for the money advanced by him, and that upon repayment of the money by Chas. W. Hepburn, to whose benefit the transaction was turned over, the land was to be conveyed to him; that the defeasance being by parol was not recorded, and that in equity the deed was nothing more than an unrecorded mortgage. The deed was made in Gould's name in consideration of the money he paid to Hepburn; the money was therefore Hepburn's money, and from this he paid his bid to the sheriff; if the facts are as alleged, therefore, the deed, although absolute in form, was in effect merely a mortgage: Boyd v. Taylor, 37 Leg. Int. 424. An absolute deed and a separate defeasance, if the latter is not recorded, amount only to an unrecorded mortgage, as against subsequent lien creditors: Corpman v. Baccastow, 84 Pa. 363; and, whilst an unrecorded mortgage is good against the mortgagor: Levinz v. Will, 1 Dall. 430; Mellon's App., 32 Pa. 121; and against his heirs: M'Laughlin v. Ihmsen, 85 Pa. 364; Tryon v. Munson, 77 Pa. 250, it will be postponed to a subsequent judgment, unless the creditor had notice of the mortgage before his debt was contracted: Lahr's Appeal, 90 Pa. 507. Upon this ground it is contended that the rights of Gould as a mortgagee must be postponed to the Betts judgment.

But it will be observed that by the original sheriff's sales, owing to the order of the Simpson and the Brown judgments, which were the instruments of the respective sales, all the liens, excepting the Brown mortgage as to No. 928 South Fifth street, including the lien of the Betts judgment and mortgage, as we have already said, were discharged as against the premises in suit, and no other lien was afterward entered until in 1879, when the Betts judgment was revived. In the meantime, however, in the month of May, 1874, Charles W. Hepburn, having exhausted his efforts to pay the money, voluntarily executed and delivered to Gould a quit-claim deed, thereby surrendering the equity of redemption existing under

the parol defeasance, and abandoned his right to regain his estate in the premises mentioned, intending, as upon a fore-closure, to vest the entire title, legal and equitable, in Samuel Gould.

We can see no good reason why the quit-claim deed was not effectual to accomplish this purpose of the parties. The liens had been discharged as stated; no new liens had been entered, and, as the good faith of the transaction is not impeached, it is plain that on and after the 26th day of May, 1874, Samuel Gould was the absolute owner in possession of these respective premises. An absolute deed, subject to an unrecorded de-feasance, on the execution of a release of the equity of redemp-tion before any other right has attached, vests an absolute estate in the grantee: Caverow v. Insurance Co., 52 Pa. 287.

If we are right in this, the question raised by the first and the eleventh assignments of error becomes unimportant, for it is no difference whether Gould claims upon an absolute sale in the first instance, or upon the title set forth in his bill in equity In either case he is entitled to recover; and as his recovery is upon the exhibition of his written and recorded title, the admission of the evidence complained of in the second, third, fourth and fifth assignments, even if the objec-tions taken thereto were well founded, did Saunders no harm.

The remaining assignments, in so far at least as they have any relevancy or bearing upon the real questions involved in the case, are fully considered and disposed of in this opinion.

The whole case turns upon the question whether the liens were discharged by the sheriff's sales made in February and April, 1873, and as to this we think there can be no doubt. Whilst we are unwilling to adopt the reasoning of the learned judge of the court below, we are of opinion that the result reached at the trial was right. The charge throughout was much more favorable to the plaintiff in error than he had any right to expect. The case is somewhat complicated in its facts, but after a careful examination of the whole matter we are of opinion the judgment should be affirmed.

Judgment affirmed.