## O. P. SAUNDERS, TO USE, v. S. M. GOULD.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued March 24, 1890—Decided May 5, 1890.

[To be reported.]

1. It is competent to show that a sheriff's deed was only a means employed by parties to secure payment of money loaned, and was by them intended merely as a mortgage; but such an allegation must be established by clear, precise and indubitable testimony, admitted under the well-settled rules of equity practice: Cullmans v. Lindsay, 114 Pa. 166; Reno v. Moss, 120 Pa. 49; Hess v. Calender, 120 Pa. 138.

2. When a deed, absolute upon its face, is subject to an unrecorded defeasance, and the holder of the equity of redemption executes a release thereof to the grantee in the deed, before any other right has attached, the grantee's defeasible title will thereby become absolute and indefeasible: Caverow v. Insurance Co., 52 Pa. 287; Saunders v. Gould, 124 Pa. 237.

(*a*) At a sheriff's sale of realty, openly and fairly conducted, the attorney of the judgment debtor became the purchaser, having procured the sale to be made in order that he might buy the property discharged of liens, and sell or pledge it to better advantage to raise money for the payment of his client's indebtedness.

(*b*) Having paid the purchase money to the sheriff, he procured from another a loan for his client, and had the lender's name inserted in the return of sale, and the sheriff's deed made to him. By an unrecorded defeasance, the lender stipulated to re-convey upon payment of the amount lent within a specified time:

3. The fact that the attorney, in paying for the property purchased at sheriff's sale, used money of the judgment debtor, would not prevent the sale from discharging liens, if the lender had no knowledge thereof, but was told that the purchase was on the attorney's private account; nor could the arrangement to hold the deed as security restore liens so discharged.

4. If the purchaser, at a sheriff's sale of land, under a judgment subsequent to a mortgage, does not know that a judgment lien prior to the mortgage has been paid, and the record does not show this fact, the sale will divest the mortgage, although the prior judgment has in fact been paid by the proceeds of other property, sold under the same junior judgment.

5. In the absence of notice, the purchaser may assume that the liens were as they appear upon the judgment docket; and, while he is chargeable with notice of what the record of the judgment and the execution un-

Statement of Facts.

der which the sale is made would disclose, he is not affected with notice of a receipt for the proceeds of a prior sale, entered on the sheriff's private docket.

6. When a property was knocked down by the sheriff to one who knew that an unsatisfied judgment, prior to a mortgage, was in fact paid, and the bidder before the return of sale, turned over his bid for value to another, whose name was inserted in the return as purchaser, the latter is not affected with the undisclosed knowledge of the original bidder.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 247 January Term 1889, Sup. Ct.; court below, No. 48 December Term 1886, C. P. No. 3.

On November 19, 1886, Oscar P. Saunders brought ejectment against Samuel M. Gould for the premises No. 928 South Fifth street, Philadelphia. The defendant pleaded not guilty. On March 1, 1887, the plaintiff conveyed the premises sued for to Mary Tilden Wagner, and on June 8, 1887, filed a suggestion of this conveyance and marked the suit for her use.

At the trial, on November 12, 1888, the following facts were shown :

The title to the premises in dispute was vested on February 3, 1873, in Charles W. Hepburn. Prior thereto, liens had been entered against the property in the order stated and in favor of the parties named below :

1. Mortgage, W. L. Brown, $6,000.

2. Judgment, James Allen, $500.

3. Judgment, J. Alexander Simpson, $650.

4. Mortgage, Silas Betts, $1,200, and judgment for same debt on the accompanying bond.

5. Judgment, J. Alexander Simpson, $500.

6. Judgment on bond accompanying Brown mortgage, No. 1.

On February 3, 1873, under an execution issued upon the judgment, No. 5, in favor of Simpson, this property was exposed to sale by the sheriff and knocked down to Henry F. Hepburn for $100, who also purchased other properties at a sheriff's sale made on April 7, 1873. Under an arrangement subsequently made, Samuel M. Gould was returned as the purchaser of these several properties and sheriff's deeds for them were made and delivered to him. He permitted Charles W.

Hepburn to collect the rents upon them until May 26, 1874, after which Gould received the same.

There was a large amount of evidence for the defendant that the transaction with Gould, although apparently on its face a purchase by him, was in reality a mortgage for a loan made by him to Charles W. Hepburn, negotiated by H. F. Hepburn, as C. W. Hepburn's attorney, Gould advancing $4,000, less a discount of ten per cent, holding the sheriff's deed as security for its repayment by C. W. Hepburn, and giving him an agreement, which was not placed upon record, engaging to re-convey upon payment of the loan with interest. Substantially the same testimony upon this point was given, as that stated in the report of a former action of ejectment between Gould and Saunders: Saunders v. Gould, 124 Pa. 237. In addition, there was testimony tending to show that Charles W. Hepburn procured the sheriff's sales to be made; that the purchase money thereon was paid to the sheriff with his money, prior to the making of any advances by Gould; that at the time of the first advance C. W. Hepburn executed a judgment note for $10,000, in favor of Gould, intended to cover that and such subsequent loans as might be made, which was entered on December 3, 1873, and that Gould recognized this judgment by signing a release of lien and by satisfying it on December 1, 1875; and entries in Gould's diary, and a letter written by him to H. F. Hepburn on January 27, 1883, tending to show that the transaction was a loan, were produced.

Gould, however, testified in denial of the allegation of a loan, to the same effect in substance as his testimony stated in 124 Pa. at page 240. He testified also that he knew nothing of the $10,000 judgment, though he afterwards stated that he had been told by H. F. Hepburn that a judgment for $10,000 had been entered for his protection, and upon being shown his signatures to the release of lien and the satisfaction of the judgment, he stated that they looked like his writing but he knew nothing about the matter, and might have made the signatures under H. F. Hepburn's direction, without asking any questions; that H. F. Hepburn was his friend, attended to various matters of business for him, and often made business arrangements for him without previously consulting him.

At the time of the sheriff's sale of the property in dispute,

Statement of Facts.

the money due upon the judgments, Nos. 2 and 3 in the list of liens above given, had been made by a sale of other property in December, 1872, under an execution issued upon the Simpson judgment, No. 5; the sheriff had paid out the money, and his private docket contained a receipt therefor, dated January 5, 1873. There was no evidence that Gould was aware of this fact when he received the title to the property in controversy, and those judgments were then standing upon the record unsatisfied. The records were brought before the court by the following general offer:

Mr. Scollay, for the defendant: Under all these judgments I shall claim the right to offer such dockets as relate to them, and I offer them now, so as to be able to read any docket relative to the case.

Mr. Bedell: I object to the dockets unless they are to supply lost records.

By the court: That is proper, and I will say that I think you have got them all in, Mr. Scollay.

In December, 1879, the Betts judgment was revived against C. W. Hepburn, and in December, 1882, a levy thereunder was made upon the property No. 928 South Fifth street, and also upon another of the properties embraced in the transaction between Hepburn and Gould. Gould thereupon filed a bill in equity in the Court of Common Pleas No. 1 of Philadelphia county, against the plaintiff in the judgment, the two Hepburns and the sheriff, praying inter alia for an injunction against the sale of the properties so levied on. The bill, as well as an injunction affidavit made by Gould in support thereof, averred that he held the title originally as security for a loan to C. W. Hepburn, but that by releases dated May 26, 1874, the latter had quit-claimed to Gould all his title to the said two properties. A preliminary injunction having been refused by said court, these properties were sold by the sheriff and purchased by Oscar P. Saunders after notice given by Gould, at the sale, of his claim of title as stated in his bill in equity. Saunders was then added as a party defendant in the equity suit, which resulted in a decree dismissing the bill.

Saunders having taken possession of the properties, Gould on August 4, 1883, brought ejectment against him and recovered judgment therefor, which, upon writ of error at No. 170

July Term 1888, Sup. Ct., was affirmed in an opinion by Mr. Justice CLARK, filed February 18, 1889: Saunders v. Gould, 124 Pa. 237. Prior to the removal of that case to the Supreme Court, however, a writ of habere facias possessionem was issued upon the judgment and Gould was put into possession, whereupon Saunders brought the present action against Gould, which was tried before the decision of the Supreme Court in the former case was rendered.

The release or quit-claim deed from C. W. Hepburn to Gould, for the property No. 928 South Fifth street, mentioned in the bill in equity, was not put in evidence in the present case, but it was produced, and Gould testified that it was delivered to him upon the day of its date, May 26, 1874.

At the close of the testimony, the defendant requested the court to charge the jury as follows:

1. There is no sufficient evidence in this case to show that there was any agreement between the defendant and Charles W. Hepburn, either before the execution of the sheriff's deed to the defendant, dated April 19, 1873, at the time of its delivery, or afterwards, which converted said deed into a mortgage, and without such evidence, said deed, as it is actually expressed within its four corners, is a conveyance of the property to the defendant, in fee-simple.[10]

2. The parol or other proof necessary to convert a deed absolute on its face into a mortgage, must be clear, explicit, and unequivocal, and in all respects such as would move a chancellor to decree a re-conveyance. It is the province of the court to decide whether particular parol evidence be sufficient to convert a deed of conveyance absolute on its face into a mortgage. Under this rule of law, the said sheriff's deed to the defendant dated April 19, 1873, is an absolute conveyance in fee, and the jury should render their verdict for the defendant, under all the evidence in this case.[11]

3. The sheriff's sale of the property No. 928 South Fifth street, under the second Simpson judgment, discharged the lien of the Betts judgment and mortgage upon said property.[12]

4. The lien of a judgment on real estate continues only five years unless revived, and it is essential, in order to continue the lien of a judgment on land sold and conveyed, that the

Charge of Court below.

terre-tenant be made a party to, or have due notice of the scire facias to revive.    As, therefore, the revival of the Betts judgment, under which the plaintiff claims title in this suit, which judgment was first entered January 3, 1870, and which revival did not take place until December 20, 1879, more than nine years after it was first entered, and over five years after the defendant's purchase and possession, the defendant not having been made a party to or given notice of the suit to revive, he being in actual possession and his deeds duly recorded, for a sufficient number of years prior to said revival, the Betts judgment, under which the plaintiff here claims title, was not a lien on the property in suit in the hands of the defendant, at the time of or after its said revival, the sheriff's sale under the Betts judgment so revived did not pass any title to the property in suit to Oscar P. Saunders, and the verdict therefore must be for the defendant.[13]

5. Under all the evidence in this case the verdict should be for the defendant.[14]

6. There is no evidence that if Charles W. Hepburn and Henry F. Hepburn actually bought the properties in suit for Charles W. Hepburn at the sheriff's sales in February and April, 1873, and put them in the name of Samuel M. Gould for the purpose of defrauding the creditors of Charles W. Hepburn, that Samuel M. Gould had any knowledge of this fraud or fraudulent intent.    Therefore, unless Gould had knowledge that it was a fraud or there was fraudulent intent on the part of Henry F. and Charles W. Hepburn, or either of them, he cannot be regarded as a party to the fraud and he is not affected by it, and the verdict should be for the defendant.[15]

7. The whole evidence shows that there was a verdict in the present issue in Court of Common Pleas No. 1 of Philadelphia county, September Term 1883, No. 41, and that this verdict was based upon an equitable defence by the defendant in that case, or an endeavor to convert a deed absolute on its face into an equitable mortgage.    Therefore, the verdict in that case having been given upon that basis, and the defence having been an equitable one, there is no need of another verdict in the issue, and the verdict in the present case should be for the defendant.[16]

8. If, from all the evidence, the question of fact is in doubt

Charge of Court below.

as to whether Samuel M. Gould, the defendant here, took his deed from the sheriff as an actual bona fide purchaser, or as a mere equitable mortgagee from Charles W. Hepburn to him, the fact that the same question has already been submitted to another jury and found in favor of the defendant here, who was the plaintiff in the former action, certainly should have enough influence with the court in the present trial and with the present jury to determine the same question in favor of the defendant in the present suit between the same parties, and, therefore, the verdict should be for the defendant.[17]

—The court, GORDON, J., refused all of the foregoing points, and charged the jury as follows:

Gentlemen of the jury, we have taken two days in the trial of this case, and I have permitted this trial to continue so fully, because of the action between the same parties in a co-ordinate court, involving the same issue, in which a jury of twelve men found a verdict in favor of Mr. Gould. That verdict of itself entitled his cause in this case to be fully and patiently heard. It is also an item of evidence, not in itself conclusive, but an item of evidence. That was the reason why I permitted this cause to proceed so far, notwithstanding there were brought into the case witnesses who gave testimony perhaps not pertinent to the case.

The ordinary province of a jury is to determine disputed questions of fact where witnesses are contradicted. Where they testify as to different circumstances of facts, the province of the jury is to ascertain what are the exact facts in the case; and, then, having found them, they are to record their verdict under the law in accordance with their finding. But a jury are only to perform such a duty where there are controlling points disputed; where they are undisputed, where they appear by the admission of the parties to be not impeached, or not impeached in any reliable way, where the facts remain undisputed, the jury have nothing to do but to record their verdict in accordance with the law as given by the court, because it is the court's duty to instruct upon the law. What the court instructs upon that subject is binding upon the jury, just as the finding of the jury is binding upon the court upon a question of fact, to a certain extent, at least.

Now, the undisputed facts in this case, as you have already

heard me say, to my mind entirely vitiate the title set up by
this defendant as against a lien creditor of Charles W. Hep-
burn. The acts of Mr. Gould, his declarations, orally and in
writing, in a solemn and formal proceeding in another court,
everything that he has done and said in connection with the
case which he has testified to upon the stand, make this out
a loan and nothing but a loan. If this were an action up-
on ·the equity side of this court, I would be obliged, if the
proceedings were an action for a re-conveyance to Chas. W.
Hepburn, upon the repayment of this money, to decree a re-
conveyance of the premises to him. [In view of that, it is
only your duty to find a verdict for the plaintiff, under the
instructions of the court. If I am in error, my brethren
of this court, or the judges of the Supreme Court, will set
my views aside ; but at present that is my view. I, therefore,
instruct you to render a verdict for the plaintiff in this case.
I suppose that you have observed that both these parties
claim upon a deed, a formal and absolute conveyance from
the sheriff. The plaintiff has proved that; and both claim
through Charles W. Hepburn, with ·the sheriff as a common
grantor. The plaintiff's title is unimpeached in that view.
Consequently you will find a verdict for the plaintiff, and the
foreman of the jury will render such a verdict informally,
which will be taken by the clerk.] [18]

—The jury returned a verdict in favor of the plaintiff as
directed, and the court, discharging a rule for a new trial, sub-
sequently entered judgment thereon. Whereupon, the defend-
ant took this appeal, ·specifying that the court erred, inter
alia :

10–17. In refusing the defendant's points.[10 to 17]

18. In charging the jury as set out in [ ] [18]

*Mr. Peter Boyd* (with him *Mr. John Scollay*), for the appel-
lant :

1. The sheriff's sale to H. F. Hepburn discharged the lien of
the Betts judgment, and therefore the subsequent sale to
Saunders passed no title : Saunders v. Gould, 124 Pa. 237. A
sheriff's private docket is not a record : Kelly v. Creen, 63 Pa.
299. The revival of the Betts judgment was too late to con-
tinue its lien, even if it had not been discharged by the sheriff's

sale in 1873 : §§ 2, 3, act of April 4, 1798, 3 Sm. L. 331 ; § 8, act of April 16, 1849, P. L. 664 ; Lusk v. Davidson, 3 P. & W. 229 ; Davis v. Ehrman, 20 Pa. 256 ; Fickes's App., 71 Pa. 447. Moreover, there were questions of fact for the jury which the judge withdrew from them and decided himself, and the eighteenth assignment of error should be sustained for this reason : Taylor v. Preston, 79 Pa. 436 ; Reynolds v. Richards, 14 Pa. 205 ; McGee v. Bank, 5 W. 32 ; Rhines v. Baird, 41 Pa. 256.

2. That the sheriff's deed to Gould was an absolute conveyance, and not in the nature of an unrecorded mortgage, was decided in Saunders v. Gould, supra. But if it were a mortgage, the subsequent quit-claim deed was effectual to vest in Gould an absolute title. Moreover, the defence having been purely equitable in the former action, the verdict and judgment therein are a bar to the present one : Winpenny v. Winpenny, 92 Pa. 440 ; Seitzinger v. Ridgway, 9 W. 496 ; Taylor v. Abbott, 41 Pa. 352 ; Peterman v. Huling, 31 Pa. 432 ; Meyers· v. Hill, 46 Pa. 11. This judgment should therefore be reversed without a new venire, and judgment entered in Gould's favor.

*Mr. Bradbury Bedell*, for the appellee :

1. The case as presented differs materially from Saunders v. Gould, 124 Pa. 237. It now appears that C. W. Hepburn procured the sheriff's sale to be made, had the property bought in for himself by his attorney, H. F. Hepburn, and paid to the sheriff the $100 purchase money, before Gould advanced a dollar. The quit-claim deed was not put in evidence and is not now before the court. Did the sale discharge the lien of the Betts mortgage ? The two judgments that had originally stood between the Brown and Betts mortgages, having been paid by the proceeds of a prior sale, the Betts mortgage was prior to all other liens except the Brown mortgage and could not be divested by the sale made upon the Simpson judgment.

2. It is claimed, however, that because the two judgments first mentioned were not satisfied upon the appearance docket, at the time of the sale, the result is different. But the appearance docket is not a part of the record : Vincent v. Huff, 4 S. & R. 298 ; Ingham v. Crary, 1 P. & W. 389 ; Beale v. Commonwealth, 7 W. 183 ; Myer v. Verner, 10 W. N. 138. The

Arguments.

judgment docket is the record evidence of liens: Bickel's App., 15 W. N. 234. It is the controlling record to furnish notice: § 3, act of April 22, 1856, P. L. 532; Hance's App., 1 Pa. 409; Ridgway's App., 15 Pa. 177; York Bank's App., 36 Pa. 460. The judgment docket was not produced in the court below, and hence there is nothing to show that the judgments prior to the Betts mortgage were in fact unsatisfied on the record. But, to take a broader ground, Gould was affected with constructive notice that they were paid.

3. An examination of the record of the judgment under which the sheriff's sale was made in 1873, would have disclosed the fact. Gould was bound to make such examination and is affected with notice of what he would thus have ascertained: Hill v. Epley, 31 Pa. 331; McCandless v. Blakely, 12 W. N. 510; Magaw v. Garrett, 25 Pa. 319; Logan v. Neill, 128 Pa. 457; Beidelman v. Foulk, 5 W. 308. Dealing with Hepburn and his attorney, who was also to some extent Gould's own attorney, Gould was affected with notice of all that had taken place: Le Neve v. Le Neve, 2 Lead. Cas. Eq. 135; Barnes v. McClinton, 3 P. & W. 67; Mullison's Est., 68 Pa. 212. And the sheriff's deed, in the hands of Gould, was simply an unrecorded mortgage, the defeasance not having been placed on record: Hendrickson's App., 24 Pa. 363; Friedley v. Hamilton, 17 S. & R. 70. The title never was out of Hepburn.

4. A mortgagor, or any holder of the equity in his place, cannot set up against the mortgage a paramount or adverse title purchased by him: Jones on Mortgages, 679, 680; and if he procures a sale and has the property bought in for him, the lien will not be discharged; Woodburn v. Bank, 5 W. & S. 448; Taylor v. Smith, 2 Wh. 432; Clark v. Martin, 49 Pa. 303; Cleary v. Kennedy, 16 W. N. 313; Hiestand v. Williamson, 128 Pa. 122. Nor should Gould be allowed to show a title different from and inconsistent with that of which he gave notice at the sheriff's sale, and set up for the first time, at the trial, a claim that he made an absolute purchase in 1873: Eshbach v. Zimmerman, 2 Pa. 313; Brown's Heirs v. Bank, 3 Pa. 187; Hiestand v. Williamson, 128 Pa. 122. The former ejectment was not an equitable one. This is never the case when the title set up is sufficient to maintain ejectment at common law: Taylor v. Abbott, 41 Pa. 352.

Opinion of the Court.

OPINION, MR. JUSTICE CLARK:

This is an action of ejectment for a certain lot of ground and the appurtenances, known as No. 928 South Fifth street, in the city of Philadelphia, the title to which, on and prior to the 3d of February, 1873, is admitted to have been vested in Charles W. Hepburn. On the 3d of February, 1873, certain judgments and mortgages against the property remained of record unsatisfied; they were entered in the order following:

No. 1. Mortgage, Charles W. Hepburn to William L. Brown, for $6,000, dated October 19, 1868; same day recorded.

No. 2. Judgment, Allen v. Charles W. Hepburn, for $500; entered October 26, 1868.

No. 3. Judgment, J. Alexander Simpson v. Charles W. Hepburn, for $650; entered July 21, 1869.

No. 4. Mortgage, Charles W. Hepburn to Silas Betts, dated January 1, 1870, for $1,200; recorded January 23, 1870. A judgment upon the bond accompanying this mortgage was entered January 3, 1870.

No. 5. Judgment, J. Alexander Simpson v. Charles W. Hepburn, for $500; entered March 8, 1870.

No. 6. Judgment, William L. Brown v. Charles W. Hepburn, for $6,000; entered upon the bond accompanying above-named mortgage designated as No. 1, July 18, 1870.

On the said 3d of February, 1873, the premises in dispute were sold on a fieri facias issued upon the Simpson judgment, No. 5 in the foregoing statement, and were purchased by one Henry F. Hepburn; the sheriff's deed, however, on the 19th of April, 1873, in pursuance of some arrangement between Henry F. Hepburn and Samuel M. Gould, was made to Gould, and it is under this deed the defendant claims. Henry F. Hepburn had been and was, at the time of the sheriff's sale, the attorney for Charles W. Hepburn, and it is alleged that his purchase was made to enable him more advantageously to sell or pledge the property to raise money to pay his client's debts.

The lien of the judgment entered on the bond accompanying the Betts mortgage, No. 4, expired on the 3d of January, 1875, but a judgment of revival was entered as against Charles W. Hepburn in December, 1879, and the same property was again levied upon as the property of Charles W. Hepburn on a fieri facias issued thereon, and on the 10th of February, 1883, a sher-

iff's deed was made to Oscar P. Saunders, under whom the plaintiff claims. The plaintiff's contention is that the deed to Gould was not an absolute conveyance, but a mere security for the payment of $4,000 loaned to Hepburn, and was therefore, in effect, nothing more than an unrecorded mortgage. Whether this was so or not, as the case was tried, is the first and principal question in the cause.

The plaintiff, after exhibiting the title of Charles W. Hepburn, gave in evidence the Betts mortgage and judgments, together with the execution effecting the sale to Saunders; he followed this with the sheriff's deed of the 10th of February, 1883, to Oscar P. Saunders, and deeds showing that the Saunders title was now vested in Mary Tilden Wagner, the use plaintiff, and rested his case. The defendant thereupon gave in evidence the various liens against Charles W. Hepburn, particularly the Simpson judgment, No. 5, with the execution thereon, and the sheriff's return of the sale of the premises in dispute to Gould, dated April 19, 1873. The defendant, Gould, was then called to the stand, apparently to show possession taken under this purchase; when, under cross-examination, the plaintiff's case in rebuttal was anticipated, and the defendant's version of the transaction of 1873–74 was fully developed. This method of trial was, perhaps, somewhat irregular, but it was pursued without objection, and therefore does not concern the present consideration of the case. The case was given to the jury with peremptory instructions to find for the plaintiff.

The deed was absolute in form. It was not direct from Hepburn to Gould, but from the sheriff. But it was competent for the plaintiff to show that the sheriff's conveyance was only a means employed by the parties to secure payment of the money loaned: Logue's App., 104 Pa. 136; that the deed was, in fact, merely a mortgage, and was so intended by the parties; for it would be a fraud on the part of the grantee to set up an instrument as indefeasible which was delivered and accepted as a defeasible conveyance: Rowand v. Finney, 96 Pa. 192; Stewart's App., 98 Pa. 377. The strong presumption is, that the deed was what it purports to be, an absolute conveyance of the interest of the defendant in the execution to the sheriff's grantee, and that presumption will prevail until the contrary is established. The burden of proof was therefore upon the plaint-

Opinion of the Court.

iff, and he was obliged to establish the issue of fact thus raised by clear, precise, and indubitable testimony. That is to say, if the case is submitted to the jury, the evidence must carry clear conviction to the minds of the jurors that the witnesses are credible; that the facts are distinctly remembered, and are truly and accurately stated; and, to the mind of the court, that if the facts alleged are true the matters in issue are definitely and distinctly established: Cullmans v. Lindsay, 114 Pa. 166. The case should, however, be withheld from the jury, unless the proof is such as would justify a decree to that effect. The judge, in such a case, performs the functions of a chancellor, and, as a judge, he will not permit the jury to do what he, as a chancellor, could not sanction. When the facts are sufficient in character, and are admitted, or are clearly established according to the measure of proof required, the judge may so instruct the jury, and direct the verdict: when they are not sufficient, or the evidence on which they rest is not of the character required, he should give binding instructions to that effect; but, where the evidence in relation to the facts alleged, although sufficient if established, is conflicting and contradictory, and where the credibility of the witnesses is involved, the case should go to the jury upon the disputed facts: Reno v. Moss, 120 Pa. 49; Hess v. Calender, 120 Pa. 138. These rules of equity practice are now well settled, and it remains for us, upon a review of the whole case, to determine whether or not, under the evidence, the court was right in giving binding instructions to find for the plaintiff.

Mr. Gould testifies that the property was sold by the sheriff on the 3d of February, 1873, and was struck off to Henry F. Hepburn; that on the 12th of April, 1873, Henry F. Hepburn waited upon him, and stated that he had bought this property on Fifth street, with others on Lombard and on Montgomery avenue, at the sheriff's sale, on his private account, and that he wanted to sell to him, (Gould.) He said he would turn them over for $4,000. Gould went and examined the several properties, and on the 17th of April, 1873, agreed with Hepburn to take them at $4,000. On the 19th of April, 1873, Gould paid $2,000 to Hepburn, and took his receipt. Hepburn's bid was at once turned over to Gould as if he had been the bidder at the sale; Gould's name was inserted in the sheriff's return, and

the deed was, on the same day, executed and acknowledged. All this occurred in the daytime of the 19th of April; in the evening of the 19th, they met again, and then, for the first time, Gould says, he learned that Henry F. Hepburn was acting in the interest of Charles W. Hepburn; Gould then signed an agreement, at the instance of Henry F. Hepburn, to sell the property back to Charles W. Hepburn on certain terms, which were modified in some respects by another agreement of the 23d of May. The price or consideration was $4,450, and the agreement was conditioned upon the payment of the money, on or before the 19th of September, 1873. On the 1st of May thereafter, Gould agreed that Charles W. Hepburn should receive the rents until September 19th; this, he says, was done for the reason that Charles, who was in need of money to live on, wanted the property and expected an award of $16,000, or thereabouts, from the city of Philadelphia, for street damages to his other property, out of which he expected to pay Gould. On the 2d of June, 1873, Gould paid the remaining $2,000 to Henry F Hepburn, and it was then agreed that, in consideration of Charles receiving the rents, the purchase price of the property should be $6,000 instead of $4,450, as previously agreed upon. On the next day (June 3d) the sheriff's deeds were delivered by Henry F. Hepburn to Gould. The time for payment of the money was several times extended by agreement. On the 31st of December, Charles received $13,500 on the award of damages from the city. "Then," says Gould, "I supposed, of course, he would pay me, as I wanted money very much. I supposed he would take up the contract; it was an obligation; but months rolled on. I called on Henry often during the months of January and February, and I could get neither money nor words out of him; he was mum. He had his money in his pocket, and I could get no satisfaction out of him. He got his money from the award, but he would not take up that contract, although he knew I was suffering at that time in paying a fearful bonus to the broker." The whole transaction, as related by Gould himself, shows that the conveyance, although at first, perhaps, spoken of and intended as a sale, was, in reality, consummated as a pledge of the property to secure a loan; and all these facts, taken with the judgment note of April 19, 1873, the recitals of the bill in equity after-

Opinion of the Court.

wards filed, the notice given at the sheriff's sale, and the defendant's letter to Henry F. Hepburn, dated 27th of January, 1883, and also the testimony of Henry F. Hepburn and the other witnesses in the cause, constitute a body of proof which is conclusive on this question : the testimony to this effect and to this extent may well be characterized as clear, precise, and indubitable.

But the defendant, Gould, testifies, further, that on the 26th of May, 1874, he made a final settlement of this matter with Henry F. Hepburn, who, from the 19th of April, 1873, throughout the entire transaction, represented Charles W. Hepburn, and conducted the business for him. Mr. Gould testifies that he had no business communications or even personal acquaintance with Charles W. Hepburn, and never saw him until the time of the trial of the first ejectment. On the 26th of May, 1874, it appears that Gould relinquished his title to the properties on South Third street and Moyamensing avenue, and agreed to, and afterwards did, convey the same to Henry F. Hepburn ; and Charles W. Hepburn, on the same day, executed a quit-claim deed of all his right and title, legal or equitable, in the Fifth-street and Lombard-street properties to Gould. The quit-claim deed itself is not in evidence, but the fact was shown without objection that such a paper was executed and delivered to Gould. The agreements of the 19th of April, 23d of April, and 2d of June, 1873, already referred to, and which constituted the defeasances, were destroyed, and it was agreed that Gould's title to the Fifth-street and Lombard-street properties should be absolute. Gould thereupon entered into the possession of these properties and into the receipt of the rents. As to this, the testimony is practically undisputed. Mr. Henry F. Hepburn was called by the plaintiff, inter alia, expressly to establish this fact, and his testimony is substantially in accord with that of Gould in this respect. It is plain, then, that Hepburn, on the 26th of May, 1874, surrendered his equity of redemption, and abandoned his right to regain his estate in the premises, intending, as upon a foreclosure, to vest the entire title, legal and equitable, in Samuel M. Gould.

An absolute deed, subject to an unrecorded defeasance, on the execution of the release of the equity of redemption, before any other right has attached, vests an absolute estate in the

Opinion of the Court.

grantee: Caverow v. Insurance Co., 52 Pa. 287; Saunders v. Gould, 124 Pa. 237. It is proper, therefore, to consider what liens were subsisting against the property on the 26th of May, 1874, when the defendant's defeasible title became indefeasible. It appears that on the 2d of December, 1872, which was prior to all the transactions to which we have yet referred between Hepburn and Gould, upon a venditioni exponas issued upon the judgment of J. Alexander Simpson, No. 5, already referred to, certain other property of Charles W. Hepburn on Sixteenth street had been sold by the sheriff for $2,500, and on the 5th of January, 1873, the sheriff, from the proceeds, paid the judgments Nos. 2 and 3, taking a receipt upon his private docket. The judgments, however, stood open and unsatisfied on the record, and were open and unsatisfied on the 3d of February, 1873, when the Fifth-street property was sold to Henry F. Hepburn, and they still remain unsatisfied on the record. There is nothing in the sheriff's return or elsewhere on the record to show how the money arising from this sale was applied. It is alleged that Henry F. Hepburn had actual knowledge of the sale, and of the manner in which the money had been applied; but it does not appear, nor is it alleged, that Gould, to whom the bid was turned over and the deed made, had any knowledge of the fact, nor do we think that the state of the record was such as to affect him with notice or put him upon inquiry. It was the duty of the holder of the Betts mortgage, if he desired to preserve and continue his lien under the first section of the act of April 6, 1830, P. L. 293, to give notice of the actual application of the money to the intervening judgments, for he knew that the effect of the sale, in the existing state of the record, was to discharge it. Nor was Gould affected with notice of the receipts entered on the private docket of the sheriff. A purchaser is not bound to look beyond the record. The payment of a prior lien, not satisfied of record, will not protect a subsequent mortgage from being discharged by the sale: Magaw v. Garrett, 25 Pa. 319; Geopp v. Gartiser, 35 Pa. 133. He had a right, in the absence of notice, to assume that the liens were as they appeared upon the record, and the judgment docket was the criterion. A purchaser at a sheriff's sale of lands sold upon execution to satisfy a judgment is ordinarily charged with the inspection of the record of that judgment

and of the execution, and is, in general, affected with notice
of any rights which it plainly discloses: Biddle v. Tomlinson,
115 Pa. 299. Gould was chargeable, therefore, with knowl-
edge of the sale of the Sixteenth-street property; but, non
constat, that the sale was or would be executed by delivery of
a deed, and if the deed was delivered he was not bound, in his
examination of the record, to know in advance what distribu-
tion would be made of the money. The sale was under the
control of the court, and, upon a proper application, it would
have been restrained until distribution, partial or otherwise,
was made.

In the case of Saunders v. Gould, supra, through a misap-
prehension of the facts, we seem to have supposed the sheriff's
sale of the premises in dispute to have been made on one of
the judgments, Nos. 2 and 3, which precede the Betts mort-
gage, and we there said: "Assuming that Henry F. Hepburn
knew or had the means of knowing that the money had been
so applied, there is no evidence that Gould had any knowledge
of that fact, and the state of the record was not such, we think,
as to put him upon inquiry. Whilst a purchaser at a sheriff's
sale, with knowledge that the judgment upon which the sale is
effected has been paid, may acquire no title, it has been held
to be otherwise with respect to a bona fide purchaser from him
without notice:" Hoffman v. Strohecker, 7 W. 86; Gibbs v.
Neely, 7 W. 305. It seems, however, that the opinion in that
case was written under some misapprehension as to the facts;
that the sale was upon No. 5, which was admittedly unpaid,
and there can be no doubt as to the purchaser's title; the only
question is as to the extent to which the encumbrances were
discharged by the sale. The very purpose of the sale was to
discharge the liens so that the property could be sold or pledged
to better advantage in raising the money to pay Charles W.
Hepburn's debts. The witnesses deny that the transaction
was conducted in bad faith. The sale was open and public,
and Henry F. Hepburn had a right to bid, and he did bid.
He bought in his own name, and paid his bid to the sheriff;
whether he used his own money or his client's money is not
important, as Gould does not appear to have known anything
of that. Gould says that Henry F. Hepburn told him he had
bought on his private account. He turned that purchase over

Syllabus.

to Gould for the benefit of his client, which he had a right to do if he chose. The effect of this sale of the 3d of February, 1873, to Henry F. Hepburn, or to Gould, whose name was inserted in the return, was to discharge all the liens against this property except the Brown mortgage, and the arrangement with Gould to hold the deed as a security could have no effect to restore them; nor was there any other lien entered or revived against Charles W. Hepburn, whilst the sheriff's deed remained a mortgage, nor for several years after the defea-. sances were destroyed, and the title became indefeasible in Gould by the execution of the quit-claim deed. On the 26th of May, 1874, therefore, there were no liens against the premises in dispute excepting the Brown mortgage; and, if Charles W. Hepburn, having exhausted his efforts to pay the money, voluntarily executed and delivered the quit-claim deed to Gould, surrendering the equity of redemption existing under the several defeasances which were destroyed, we can, as we said in Saunders v. Gould, supra, see no good reason why the quit-claim deed was not effectual to accomplish this purpose of the parties. We are of opinion, therefore, that the court erred in giving binding instructions to find for the plaintiff. If we are right, the case should have gone to the jury, with instructions to find for the defendant.

Judgment reversed.

On May 28, 1890, a motion for a re-argument was refused.