In re Ervin J. BEST, Debtor.

Ervin J. Best, Plaintiff,

v.

David A. Galloway, Steven L. Lange, American Residential Equities XXXXI LLC, John D. Green, solely in his official capacity as sheriff of the City of Philadelphia, and William C. Miller, standing chapter 13 trustee, Defendants.

Steven L. Lange and David A. Galloway, Plaintiffs,

v.

Ervin Best, Defendant.

Bankruptcy No. 08–17185bf.
Adversary Nos. 09–0048, 09–0084.

United States Bankruptcy Court, E.D. Pennsylvania.

June 12, 2009.

Opinion Denying Reconsideration July 30, 2009.

Irwin Lee Trauss, Philadelphia Legal Services, Philadelphia, PA, for Plaintiff/Defendant Ervin J. Best.

Andrew L. Miller, Andrew L. Miller & Associates P.C., Bala Cynwyd, PA, for Defendants/Plaintiffs David A. Galloway and Steven L. Lange, and Defendants John D. Green and William C. Miller.

Peter J. Mulcahy, Phelan Hallinan & Schmieg, LLP, Philadelphia, PA, for Defendant American Residential Equities XXXXI, LLC.

## MEMORANDUM

BRUCE FOX, United States Bankruptcy Judge.

There are two motions before this court filed by Messrs. David A. Galloway and Steven L. Lange: a motion to dismiss the amended complaint filed by the chapter 13

debtor, Mr. Ervin Best, docketed at Adversary Proceeding No. 09–0048; and a motion to remand a state court proceeding removed to this court by Mr. Best and docketed at Adversary Proceeding No. 09–0084. The proceeding removed had been initiated by Messrs. Lange and Galloway against Mr. Best.

A consolidated hearing to resolve these two motions was held, and neither party offered any evidence concerning the request for remand. Instead, the parties offered oral argument and supporting memoranda.

In connection with the motion to remand Adversary No. 09–0084, this proceeding concerns an ejectment action brought by Messrs. Lange and Galloway against Mr. Best involving real property located on West Allegheny Avenue in Philadelphia. Adversary No. 09–0048 was commenced by Mr. Best against Messrs. Lange and Galloway and, after amendment, American Residential Equities XXXXI, LLC, Philadelphia Sheriff John D. Green and standing chapter 13 trustee William C. Miller, Esq. were added as defendants. That adversary proceeding, as will be discussed, also concerns the West Allegheny Avenue property.

The facts surrounding Messrs. Lange's and Galloway's motion for remand do not appear to be disputed. Similarly, for purposes of the outstanding motion to dismiss, to the extent it is based upon the plaintiff's failure to state a cause of action, I shall accept the allegations in the amended complaint as true in determining whether the plaintiff has stated a claim, with those averments construed in a light most favorable to the plaintiff. *See, e.g., Ashcroft v. Iqbal,* —— U.S. ——, —— – ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009);

*Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008).

## I.

On January 19, 1999, Ameriquest Mortgage Company obtained a mortgage on Mr. Best's real property, located at 3422 West Allegheny Avenue, Philadelphia, Pennsylvania. Amended Complaint, ¶ 12. Apparently, that mortgage fell into default and on July 15, 2004, Ameriquest commenced a foreclosure action in the Philadelphia Court of Common Pleas against the West Allegheny Avenue property. *Id.,* at ¶ 20. On September 7, 2004, a judgment in foreclosure was entered by default. *Id.,* at ¶ 21.

On December 2, 2004, after the foreclosure judgment was entered, Ameriquest assigned its mortgage to defendant American Residential Equities XXXXI LLC. *Id.,* at ¶ 28. Thereafter, beginning in January 2005, American Residential, through its agent Select Portfolio Servicing, sent notices to Mr. Best and communicated with him via telephone. *Id.,* at ¶¶ 42, 45, 47, 59, and 60. Mr. Best avers that among those communications was a notice informing him of his right to cure his mortgage delinquency within thirty days. *Id.,* at ¶¶ 60, 70.

Mr. Best asserts that on March 8, 2005, without prior notice to him, the Sheriff of Philadelphia County conducted a foreclosure sale of the West Allegheny Avenue property, purportedly based upon Ameriquest's judgment in foreclosure and the writ of execution issued thereupon. *Id.,* at ¶¶ 66, 71–72.[1] The West Allegheny Avenue property was purchased at this foreclosure sale by Messrs. Galloway and Lange. *Id.,* at ¶ 87. The sheriff then issued a deed dated May 21, 2005, to Messrs. Galloway and Lange, purporting

---

**1.** In its answer to the amended complaint, defendant American Residential Equities asserts that the foreclosure sale occurred with adequate notice on March 1, 2005.

to convey to them title to 3422 West Allegheny Avenue. *Id.,* at ¶ 88. The movants recorded the deed on June 21, 2005. *Id.,* at ¶ 91.

On October 9, 2007, Messrs. Lange and Galloway commenced an ejectment action against Mr. Best in the Philadelphia Court of Common Pleas, docketed as *Lange v. Best,* October Term 2007, No. 999. The movants asserted in that state court civil action two counts: ejectment from the realty, and damages for mesne profits (rent). Mr. Best answered the state court complaint, denying the movants' allegations and asserting new matter (*i.e.,* affirmative defenses). In his state court answer, he averred that the original Ameriquest mortgage was invalid, as was the foreclosure judgment. He also asserted that Ameriquest had no authority to schedule the sheriff sale of his property based upon its foreclosure judgment because it no longer held the mortgage at the time of sale, having assigned it to American Residential Equities.

Accordingly, Mr. Best maintained in state court that the sheriff sale of his property was invalid and the sheriff's deed to the West Allegheny Avenue property did not convey title to Messrs. Galloway and Lange. Mr. Best requested that the state court dismiss the ejectment action with prejudice as well as the claim for rent.

On June 27, 2008, the state court plaintiffs moved for summary judgment, which was opposed by Mr. Best. On October 31, 2008, Mr. Best filed the above-captioned voluntary chapter 13 bankruptcy petition. On November 6, 2008, the state court granted summary judgment to Messrs. Galloway and Lange based upon their pre-

bankruptcy motion. Mr. Best filed a notice of appeal from that order.

As this state court adjudication occurred after the debtor's bankruptcy filing, its validity under section 362 was at issue. Messrs. Lange and Galloway therefore moved to terminate and annul the bankruptcy stay, which motion was opposed by Mr. Best. By order dated February 20, 2009, accompanied by a statement of reasons, I granted the motion to terminate the stay filed by Messrs. Lange and Galloway, which order allowed them to exercise their non-bankruptcy law rights, if any, to obtain possession of the West Allegheny Avenue real property. I also lifted the stay for Mr. Best to defend the state court litigation. In so doing, I denied the request of Messrs. Lange and Galloway to retroactively validate the state court summary judgment decision entered after the debtor's bankruptcy case had been filed and after notice of that bankruptcy filing had been provided in that state court litigation. *See Raymark Industries, Inc. v. Lai,* 973 F.2d 1125, 1132 (3d Cir.1992); *see also In re Benalcazar,* 283 B.R. 514, 529 (Bankr.N.D.Ill.2002). Similarly, I determined that the debtor's appeal from that decision was invalid. *See, e.g., In re Krystal Cadillac Oldsmobile GMC Truck, Inc.,* 142 F.3d 631 (3d Cir.1998); *In re Highway Truck Drivers & Helpers Local Union No. 107,* 888 F.2d 293, 298 (3d Cir.1989); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448–49 (3d Cir.1982).[2]

In granting relief from the bankruptcy stay in February 2009, I expressed no position on the underlying merits of the

---

**2.** To the extent that the Messrs. Lange and Galloway were asserting in the state court ejectment action a damage claim against the debtor for his use of their property, the bank-

ruptcy stay remained in effect to preclude them from execution upon any monetary award.

ejectment action or Mr. Best's opposition thereto.[3]

No party appealed the February 20th lift stay order.

On March 23, 2009, Mr. Best removed the state court ejectment action to this court, thereafter docketed at Adv. Proc. 09–0084. On April 14, 2009, Messrs. Gallo-way and Lange filed the instant motion to remand the matter back to state court. Mr. Best filed a response opposing remand.

Meanwhile, on February 10, 2009, Mr. Best filed the adversary proceeding docketed at Adv. Proc. 09–0048 against Messrs. Galloway and Lange. On April 6, 2009, he filed an amended complaint, inter alia,

**3.** I did, however, observe in my February 2009 ruling that Mr. Best's challenge to Ameriquest's right to execute on its foreclosure judgment by sheriff sale of the realty contained the legal assumption that a mortgagee can validly assign a mortgage after the entry of a foreclosure judgment (as opposed to assigning the judgment itself), which assumption may not be correct under Pennsylvania law, owing to the doctrine of merger. That is, Mr. Best maintains that after entry of a judgment in foreclosure and prior to sheriff sale, Ameriquest could assign its mortgage interest to American Residential and only the assignee may thereafter execute upon the mortgage. As I noted on February 20th:

> It would appear that Ameriquest Mortgage Co. had the right under state law to assign its foreclosure judgment. *See generally Trapp v. Laffey,* 349 Pa. 160, 161, 36 A.2d 800 (1944) ("The original petition to open the judgment was not introduced until the assignee of the judgment had, after the judgment had been renewed and revived by scire facias, sold at sheriff's sale the property described in the mortgage and had applied to the court to have the amount of the deficiency judgment determined."); *Jefferson Bank v. Newton Associates,* 454 Pa.Super. 654, 659–60, 686 A.2d 834 (1996); *Parkman v. Brosman,* 14 Pa. D. & C.2d 668, 669 (1958). There is no evidence that it did so.
>
> Moreover, under Pennsylvania law, a mortgage merges into a foreclosure judgment. *See, e.g., Lance v. Mann,* 360 Pa. 26, 60.A.2d 35 (1948). As observed by the Third Circuit Court of Appeals in construing state law, "[t]he doctrine of merger of judgments thus provides that the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." *In re Stendardo,* 991 F.2d 1089, 1095 (3d Cir.1993). Furthermore, the Third Circuit also noted that "the Mortgage ceased to

exist when judgment was entered." *Id.,* at 1097; see also *In re Dukes,* 1998 WL 124220, at *3 (Bankr.E.D.Pa.1998) ("Prior to Plaintiff's bankruptcy, a judgment ... had been entered on her mortgage. When that occurred, the mortgage merged into the Judgment and ceased to exist."); *see also In re A & P Diversified Technologies Realty, Inc.,* 467 F.3d 337, 343 (3d Cir. 2006) ("Under the merger doctrine, the mortgage and its concomitant attorneys' fees provision ceased to exist when the judgment was entered.") (applying New Jersey law).

It may be that, under Pennsylvania law, the post-judgment assignment of the mortgage was of no effect, rather than, as the debtor now argues, that the sheriff sale had no effect. *Cf. Cancilla v. Bondy,* 353 Pa. 249, 251, 44 A.2d 586 (1945) (mortgagee obtains judgment on May 26, 1941, assigns mortgage on July 12, 1941, and proceeds with sheriff sale on September 5, 1941). That issue of Pennsylvania law is better left to be determined by the state courts.

(The parties do not refer me to any state court decision squarely on point.)

Statement of Reasons, February 10, 2009, at 13 n. 8.

In response to the instant motion to dismiss, Mr. Best relies upon *Brumbach v. McLean,* 196 Pa. 321, 46 A. 418 (1900), for his contention that a mortgage interest is distinct from and survives a judgment in foreclosure and thus is assignable in Pennsylvania, although he concedes that the *Brumbach* decision "is not on all fours with the instant case" and "did not involve a mortgage that was assigned after a judgment." Debtor's Memorandum in Opposition, at 16, 18. Whether that decision supports Mr. Best's interpretation of state law, or is limited to the more narrow issue of resolving the competing claims of mortgage assignees from the same assignor, I shall again leave to the state courts to determine.

adding defendants American Residential Equities, John D. Green, as sheriff of the City of Philadelphia, and William C. Miller, as chapter 13 trustee.[4] On April 24, 2009, Messrs. Galloway and Lange filed a motion to dismiss the amended complaint.

Similar to his allegations in opposing the state court ejectment action, in this amended complaint Mr. Best alleges that on December 2, 2004, Ameriquest assigned the mortgage it held on his West Allegheny property to American Residential Equities XXXXI, LLC, which assignment was of record before the sheriff sale at which movants purchased the property. Amended Complaint, ¶¶ 28, 83. Mr. Best thus contends again in his amended complaint that the March 2005 sheriff sale was defective and did not convey any title to his property because, at the time of sale, American Residential Equities held the mortgage and had not authorized the sale. *Id.*, ¶¶ 54, 107.

Mr. Best has asserted four counts in his amended complaint; the first two counts are against movants Galloway and Lange only. Counts three and four are against American Residential Equities only.

In Count I of the complaint, Mr. Best seeks a declaratory judgment that any interest in the West Allegheny Avenue property claimed by Messrs. Galloway and Lange is invalid—because it is based on a deed that was obtained after a sheriff's sale that was conducted without authority under Pennsylvania law—and that the realty is property of the debtor's chapter 13 bankruptcy estate. Alternatively, in Count II he requests that this court "avoid" the sheriff's deed pursuant to 11 U.S.C. § 544(a)(3); preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551 and for the benefit of the debtor to the extent of his exempt equity pursuant to 11 U.S.C. § 522(i); recover the property pursuant to 11 U.S.C. § 550(a)(1) by compelling Messrs. Galloway and Lange to convey the property to the debtor; and impose a lien on the property in favor of Messrs. Galloway and Lange in the amount of $46,000 (the amount they allegedly paid at the foreclosure sale).[5]

Therefore both adversary proceedings—the one commenced by Mr. Best in this forum and the state court matter removed to this court by Mr. Best—share a common nucleus of facts as well as seek similar relief as concerns Messrs. Lange and Galloway.

## II.

I turn first to the movants' request to remand the removed state court ejectment action. They maintain that removal is warranted for the following reasons:

● the removal was untimely;

---

4. The amended complaint, however, does not seek any relief against the sheriff or the chapter 13 trustee.

5. If the court does not grant Mr. Best the relief requested in Counts I or II, then Mr. Best requests in Count III, alleged against American Residential Equities, that the court avoid the sheriff's deed pursuant to 11 U.S.C. § 544(a)(3); preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551 and for the benefit of the debtor to the extent of his exempt equity pursuant to 11 U.S.C. § 522(i); and recover the property pursuant to 11 U.S.C. § 550(a)(1) by requir-

ing American Residential Equities to pay $120,000 to the chapter 13 trustee and the trustee to pay to the debtor the amount of this property that he exempted.

If the court does not grant Mr. Best the relief requested in Counts I, II or III, then he requests in Count IV, alleged against American Residential Equities, that the court find that American Residential Equities committed an unfair and deceptive act and practice in violation of 73 P.S. § 201–2(2)(xxi), and award actual damages plus treble damages pursuant to 73 P.S. § 201–9.2.

- the debtor failed to file a notice of removal with the Superior Court of Pennsylvania;
- the debtor waived his right to remand since he fully litigated the ejectment action and foreclosure action in state court;
- this court's order of February 20, 2009 held that the state court was the appropriate forum to determine the ownership issue;
- this court lacks subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine;
- the doctrines of res judicata and collateral estoppel bar the debtor's claims;
- the requested relief is identical to the relief requested by the debtor in the pending adversary action docketed at Adv. Proc. No. 09–0048; and
- the equities clearly favor remand,

 Section 1452(b) of title 28 of the United States Code provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." This subsection grants very "broad discretion" to the court to remand a removed proceeding back to the state court from which it has been removed or to deny the remand request. 1 *Collier on Bankruptcy* ¶ 3.07[5], at 3–79 (15th ed. rev.2008).

 In general, among the factors to be considered by a court in determining whether equitable grounds to remand exist are:

1. the court's duty to decide matters properly before it;

2. plaintiff's choice of forum as between state and federal courts;

3. nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;

4. prejudice to involuntarily removed parties;

5. comity considerations;

6. economical and/or duplicative use of judicial resources and

7. effect a remand decision would have on the efficient and economic administration of the estate.

*Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 482 (D.Del.1989); *see, e.g., Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991); *see also* 1 *Collier on Bankruptcy*, ¶ 3.07[5], at 3–80 (15th ed. rev.2008), identifying the relevant factors as including:

—*forum non conveniens;*

—a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court;

—a holding that a state court is better able to respond to a suit involving questions of state law;

—a situation in which trial had already been held in the state court, that court had issued its opinion, and all that remained for it to do was enter judgment;

—the expertise of the court in which the matter was pending originally, *e.g.*, the Court of Federal Claims or the Court of International Trade.

(footnotes omitted).

In applying these general considerations, courts have noted that principles of abstention found in 28 U.S.C. § 1334(c) should be included in the matrix of equitable factors that are relevant to a determination of a motion to remand under section 1452(b). *See, e.g., Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir.2000); *In re Warren*, 125 B.R. 128, 130–31 (E.D.Pa. 1991); *In re Asousa*, 264 B.R. 376, 381 (Bankr.E.D.Pa.2001). Indeed, the Third Circuit Court of Appeals has instructed that the issues surrounding abstention

should be considered prior to application of the more general principles of equitable remand:

> The defendants argue that § 1452(b) provides the exclusive means by which a federal court can remand a removed bankruptcy-related case. But section 1334(c)(2) does not purport to interfere with a court's authority to remand under § 1452(b). Rather, § 1334(c)(2) governs only whether a district court must abstain from hearing a case. Once a district court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an "equitable ground" justifying remand under § 1452(b).

*Stoe v. Flaherty,* 436 F.3d 209, 215 (3d Cir.2006).

■ Mandatory abstention is provided by 28 U.S.C. § 1334(c)(2), which states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■ Under the terms of this provision, a bankruptcy court "must abstain if the following five requirements are met: (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is 'related to' a case under title 11, but does not 'arise under' title 11 and does not 'arise in' a case under title 11,

(3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action 'is commenced' in a state forum of appropriate jurisdiction; and (5) the action can be 'timely adjudicated' in a state forum of appropriate jurisdiction." *Stoe v. Flaherty,* 436 F.3d at 213.

■ Claims involving state court foreclosure proceedings of a debtor's property are non-core, related proceedings. These claims do not "arise in" or "arise under" any Bankruptcy Code provisions; nor do they arise solely by virtue of a bankruptcy filing. Thus, they are not core proceedings. Nonetheless, their outcome could augment or diminish the debtor's estate and thus are related to the bankruptcy case. *See Bevilacqua v. Bevilacqua,* 208 B.R. 11, 16 (E.D.N.Y.1997).

■ The movants have the burden to establish the elements of mandatory abstention, including the requirement that the proceeding could be timely adjudicated in state court. *See generally Stoe v. Flaherty,* 436 F.3d at 219 n. 5; *In re Midgard Corp.,* 204 B.R. 764, 778 (10th Cir. BAP 1997); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 74 B.R. 651, 654 (N.D.Ill.1987).

In this instance, all five elements of mandatory abstention have been established: The removed state court civil action is based on state law claims and causes of action that do not arise under or in the case under title 11; this court would not have jurisdiction over the proceeding but for its relation to the bankruptcy case; the proceeding is related to the debtor's chapter 13 case because its outcome may increase property of the bankruptcy estate; the ejectment action has been pending in state court since 2007 (and the sheriff sale occurred in 2005); and the state court's readiness to decide the summary judgment motion demonstrates its

ability to timely adjudicate the matter. *See generally In re Talon Holdings, Inc.,* 221 B.R. 214, 220–21 (Bankr.N.D.Ill.1998) ("Non-core actions initiated by a debtor in a state court prior to the date of a bankruptcy petition would ordinarily seem to satisfy three of the four elements under § 1334(c)(2), as such lawsuits are not core proceedings and would not fall within the jurisdiction of the federal courts absent the bankruptcy.... Thus, where a party opposing removal contends that abstention is mandatory, the possibility of timely adjudication in the state court would seem to be the critical variable.").

Accordingly, mandatory abstention of the removed adversary proceeding is appropriate. *See Bevilacqua v. Bevilacqua,* 208 B.R. at 16 (where a debtor removed a state court action against her seeking ejectment, the court found that all of the alleged claims were non-core, had already been commenced in state court, and had reached the stage of summary judgment and trial, thus could be adjudicated in a timely fashion); *Cockrell v. Cox,* 2008 WL 654272 (S.D.Miss.2008) (debtor's removed

state court complaint seeking, *inter alia,* to enjoin mortgagee from foreclosing was subject to mandatory abstention and remand); *In re Borchardt,* 56 B.R. 791, 793 (D.Minn.1986); *In re Mill–Craft Bldg. Systems, Inc.,* 57 B.R. 531, 535 (Bankr. E.D.Wis.1986) (mandatory abstention applied to removed state court foreclosure lawsuit).

Moreover, the undisputed facts in this contested matter justify remand to state court even were abstention not mandatory.

■ This proceeding originated in the state court, filed by the movants, and they reiterated their desire to adjudicate the matter there by requesting stay relief to continue it in state court, which relief was granted. Furthermore, this court determined in the lift stay contested matter that the state court was the more appropriate forum to decide this dispute involving post-judgment assignments of mortgages.[6] The claims involved in this proceeding are purely state law claims better addressed by the state court. *See In re Abruzzo,* 1999 WL 1271761, at \*3 (Bankr.E.D.Pa.

---

**6.** Mr. Best argues that Bankruptcy Rule 9027 anticipates removal of an action to the bankruptcy court after a lift stay motion is granted, in that it provides a deadline for removal measured from the entry of an order terminating a stay. *See* Fed. R. Bankr.P. 9027(a)(2)(B). However, the Advisory Committee note to the rule explains that removal is "of little utility" if the pending litigation is stayed, as when the debtor is the defendant. "As long as the stay remains in effect there is no reason to impose a time limit for removal to the bankruptcy court and, therefore, [the rule] provides that a removal application may be filed within 30 days of entry of an order terminating the stay." Advisory Committee Note to Fed. R. Bankr.P. 9027.

Thus, I find unpersuasive Mr. Best's suggestion that the removal deadline in Rule 9027 implies that a bankruptcy court should not remand litigation after termination of the bankruptcy stay. Indeed, as some courts have observed, Mr. Best's removal of this case

to this court after grant of the lift stay motion "render[s] that hearing on the lifting of the automatic stay and the order which followed an exercise in futility." *In re Abruzzo,* 1999 WL 1271761, at \*4 (Bankr.E.D.Pa. Dec. 28, 1999); *see also In re Borchardt,* 56 B.R. at 794:

When the bankruptcy court granted Farmers Bank relief from the automatic stay, that court essentially determined that the state law claim should more appropriately be brought in state court. This court agrees. More importantly, this court will not be a party to debtors' tactics which effectively circumvent the bankruptcy court's order granting Farmers Bank relief from the automatic stay and authorizing the bank to pursue its state law remedies. Seeking to avoid the inevitable foreclosure, the debtors have engaged in a manipulation of the bankruptcy procedures. For the above reasons, the equities of the present circumstances warrant the court's remand.

Dec. 28, 1999) (noting state court has more experience and expertise than bankruptcy court in foreclosure matters). Comity considerations as well as prejudice to the state court plaintiffs support allowing the state court to determine a civil action pending before it for more than one year, rather than restarting the litigation process in a federal court. *See id.,* at *3 (noting prejudice to state court plaintiffs in not remanding foreclosure proceeding litigated past the point of judgment). Moreover, determining this proceeding in bankruptcy court may be uneconomical, given that the state court has already heard argument and reviewed pleadings, including those submitted for summary judgment. *See generally In re Grace Community, Inc.,* 262 B.R. 625, 630 (Bankr.E.D.Pa.2001) (non-core, related matters with no federal claims must be remanded if the action has been commenced in state court, and can be timely adjudicated there); *see Abruzzo,* at *3 ("advanced stage" of proceeding supported remand). Thus, remand for equitable reasons is also appropriate. *See In re Canton,* 2009 WL 981114 (Bankr.D.Mont. 2009).

Accordingly, I will abstain from retaining jurisdiction of the adversary proceeding removed to this court and docketed at Bankr. No. 09–0084, and will remand that lawsuit back to the state court under section 1452(b).

### III.

■ Next, I shall consider defendants' Lange and Galloway's motion to dismiss Counts I and II of the amended complaint that Mr. Best initiated against them in this bankruptcy court. Among the myriad of arguments that the movants present for dismissing these two claims is that this bankruptcy court should exercise its discretion in abstaining from taking jurisdiction over the adversary proceeding, and that the complaint fails to state a cause of action against them.[7]

### A.

■ As noted previously, Count I seeks a declaration that the March 2005 sheriff sale and subsequent deed did not convey Mr. Best's interest in the West Allegheny realty, pursuant to Pennsylvania law. Although the state court litigation, just remanded, does not seek affirmative relief in favor of Mr. Best beyond dismissal of the ejectment action, the debtor raises similar factual and legal arguments to Count I under the heading "New Matter."

28 U.S.C. § 1334(c)(1) provides:

[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11[,]

The non-specific language of the statute, its evolution, and the paucity of legislative history has resulted in somewhat differing

---

**7.** To the extent that defendants' Lange and Galloway seek to dismiss Counts III and IV, which seek relief only against defendant American Residential Equities XXXXI, LLC, they have no standing to do so. *See, e.g., Dover Ltd. v. A.B. Watley, Inc.,* 2006 WL 2987054, at *8 (S.D.N.Y.2006); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 1994 WL 796603, at *7 n. 5 (D.Del.1994) ("Mantas Inc. is not named as a defendant in Count VI and accordingly has no standing to move for

its dismissal or for summary judgment on the count."); *see also Ashcroft v. Department of Corrections,* 2007 WL 1989265, at *8 (W.D.N.Y.2007) ("Thus, DOCS (and the other moving defendants) lack standing to move to dismiss claims against the non-appearing defendants Madison, Zon, and Ashby and their motions as to these claims is denied."); *Norfolk Federation of Business Districts v. Dep't of Housing & Urban Dev.,* 932 F.Supp. 730, 741–42 (E.D.Va.1996).

approaches toward permissive abstention of bankruptcy proceedings. *See generally* Block–Lieb, *Permissive Bankruptcy Abstention,* 76 Wash. U. L.Q. 781 (Fall, 1998). One circuit court has made general observations, in *dicta,*[8] that section 1334(c)(1) affords "broad power to abstain whenever appropriate" and that "[t]he abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987).

■ In this district, the consensus position involves consideration of a non-exclusive list of factors:

> The following criteria guide the discretionary decision to abstain: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of related non-bankruptcy proceedings; (5) the basis of the bankruptcy court's jurisdiction over the claim; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the claim in bankruptcy court involves forum shopping; (11) the existence of the right to a jury trial; and

(12) the presence in the proceeding of nondebtor parties.

*Gilbert v. Ben Franklin Hotel Associates,* 1995 WL 598997, at *1 (E.D.Pa.1995); *see e.g., Allen v. J.K. Harris & Co., LLC,* 331 B.R. 634, 645 (E.D.Pa.2005); *In re Asousa Partnership,* 276 B.R. 55, 74–75 (Bankr. E.D.Pa.2002); *see also Bricker v. Martin,* 348 B.R. 28, 34 (W.D.Pa.2006); *Civic Center Cleaning Co. v. Reginella Corp.,* 140 B.R. 374, 375–76 (W.D.Pa.1992); *In re La-Roche Industries, Inc.,* 312 B.R. 249, 253–54 (Bankr.D.Del.2004); *see also* 1 *Norton Bankr.L. & Prac.*3d, § 4:40 (2009) (listing 14 factors).

■ "Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993). Furthermore, whether permissive abstention is appropriate is committed to bankruptcy court discretion. *See, e.g., Civic Center Cleaning Co., Inc. v. Reginella Corp.,* 140 B.R. at 375; *In re Asousa Partnership,* 276 B.R. at 75. Moreover, core claims as well as non-core claims are subject to permissive abstention. *See, e.g., In re Best Reception Systems, Inc.,* 220 B.R. 932, 952 (Bankr.E.D.Tenn.1998).

One court has noted that discretionary abstention involves equitable factors similar to those involved in applying the equitable remand provisions of section 1452(b). "Pursuant to these statutes [*i.e.,* 28 U.S.C. §§ 1334(c)(1), 1452(b) ], in considering whether equity requires abstention and remand, courts assess (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent to which issues of

---

**8.** A court of appeals has no jurisdiction to review the application of discretionary abstention. *See* 28 U.S.C. § 1334(d); *In re Fed-* *eral–Mogul Global, Inc.,* 300 F.3d 368, 389 n. 14 (3d Cir.2002). Thus, there can be no circuit court-mandated approach.

state law predominate, (3) the difficulty or unsettled nature of the applicable state law, (4) comity, (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed defendants...." *In re RBGSC Inv. Corp.*, 253 B.R. 369, 381–82 (E.D.Pa.2000), *overruled in part on other grds.*, *In re Exide Technologies*, 544 F.3d 196, 220 (3d Cir. 2008); *see also Shared Network Users Group, Inc. v. WorldCom Technologies, Inc.*, 309 B.R. 446, 451 (E.D.Pa.2004).

 Because I concluded above that the removed ejectment proceeding should be remanded to state court, the relief sought by Mr. Best in Count I of his amended complaint would parallel his affirmative defenses in that state court litigation. In considering whether discretionary abstention as to the declaratory judgment in Count I is warranted in these circumstances, I note that when parallel litigation is pending in both state and federal courts, abstention may be appropriate under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), owing to considerations of " 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' "[9] The courts considering abstention under *Colorado* balance six factors: "(1) which court first assumed jurisdiction over property involved, if any; (2) the relative convenience of the fora; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law applies and

(6) whether the state court will adequately protect the federal plaintiff's interests." *BIL Management Corp. v. New Jersey Economic Development Authority*, 310 Fed.Appx. 490, 492 (3d Cir.2008) (non-precedential).

Application of these various factors support the movants' request that this court abstain from adjudicating Count I of the amended complaint. Count I is grounded upon Mr. Best's contention that the sheriff deed transfer was a nullity as based on a sale conducted without authority and contrary to notices that he received; thus, this claim involves application of Pennsylvania law rather than federal bankruptcy law. Moreover, Count I restates the defense Mr. Best presented in the state court. The state court litigation has been pending since 2007, long before this bankruptcy case commenced. Comity supports dismissal. The state law issues raised by the debtor in Count I will be adequately considered by the state court judge in the remanded litigation. And, as mentioned earlier, the state court will likely be able to decide this dispute quickly, a positive effect on the administration of this bankruptcy case.[10] Additionally, given the timing of the filing of this adversary proceeding (on the day the movants argued for relief from the bankruptcy stay to prosecute their state court action), originally naming only Galloway and Lange in the complaint, it is probable that this adversary proceeding was commenced primarily to obtain a federal forum for the same issues that make up the debtor's new matter in the state court litigation. *See In re Abruzzo*, 1999 WL 1271761, at *4:

> The last but most compelling reason to remand is to prevent Debtor's utilization

---

**9.** Quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

**10.** The debtor's chapter 13 plan depends upon his sale of the disputed property. Therefore, speedy determination of the state court matter will prevent delay in confirmation and administration of this case.

of the removal statute to circumvent an order granting S & S relief from the bankruptcy stay to pursue the foreclosure proceeding in state court. In granting S & S relief from the stay, I made the determination that no legitimate purpose would be served by permitting Debtor's bankruptcy case to further delay the foreclosure proceeding in state court. Allowing Debtor to proceed with the foreclosure proceeding here would undermine and nullify that determination. If Debtor legitimately believed that the foreclosure presented issues that should be addressed by this Court rather than the state court, she would have sought removal proximate to her bankruptcy filing rather than waiting until relief from the stay was granted. The timing of the removal petition, occurring after the stay relief order, portends other intentions.

■ Accordingly, Count I of the amended complaint shall be dismissed under 28 U.S.C. § 1334(c)(1) in favor of the state court adjudication of the ejectment litigation. *See In re Rarick*, 132 B.R. 47 (D.Colo.1991); *In re Counts*, 54 B.R. 730 (Bankr.D.Colo.1985); *In re Ghen*, 45 B.R. 780 (Bankr.E.D.Pa.1985); *see generally C.K. Williams, Inc. v. All American Life Ins. Co.*, 1994 WL 541992 (D.Kan.1994) (declaratory judgment action dismissed in light of pending state court litigation).[11]

### B.

Finally, Count II purports to raise a claim under section 544(a)(3) of the Bankruptcy Code as an alternative to the relief sought in Count I. However, as I will now discuss, those allegations fail to state a claim against defendants Lange and Galloway.

■ 11 U.S.C. § 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

The import of section 544(a), known colloquially as the trustee's "strong-arm powers," *see, e.g., In re Bridge*, 18 F.3d 195, 198 (3d Cir.1994), was summarized by a bankruptcy commentator:

Federal and state law thus work in tandem: First, section 544(a) confers on the trustee the status of both a judicial lienor and bona fide purchaser who claim property through the debtor, and provides that the trustee enjoys their rights and powers with respect to the property. Second, the substance of these rights and powers, primarily the priority of these claims in relation to other inter-

---

11. Since a bankruptcy court's jurisdiction of a multi-count complaint is determined on a count by count basis, with some counts possibly classified as core and others non-core, *Halper v. Halper*, 164 F.3d 830, 839 (3d Cir. 1999), abstention considerations must be similarly considered. *See In re Bay Vista of Virginia, Inc.*, 394 B.R. 820 (Bankr.E.D.Va.2008); In re *Alliance Leasing Corp.*, 2007 WL 5595446 (Bankr.M.D.Tenn.2007) (abstaining from hearing counts remaining after dismissing two others); *In re Kesar Enterprises, Inc.*, 330 B.R. 756, 758 (Bankr.W.D.Mo.2005) ("State Bank's Abstention Motion is granted as to Count I of the Amended Complaint and denied as to Counts II, III and IV. . . ."); *In re Federalpha Steel LLC*, 341 B.R. 872 (Bankr. N.D.Ill.2006).

ests in the property, is then determined by reference to state law. Third, if state law provides that the trustee's claim (as a judicial lienor or bona fide purchaser) is entitled to priority over a third party's interest in the property, the consequence is prescribed by federal law, section 544(a), which is that the trustee can entirely avoid the inferior, third-party claim. The third party's [property] interest is completely eliminated as to the third party even though the result under state law would be less severe.

On the other hand, the third party's interest is unaffected by section 544(a) if, under state law, her interest primes the trustee's claim as lien creditor or purchaser. This is true even if state law subordinates the third person's interest to other kinds of claims that the trustee cannot assert under section 544(a).

Epstein, 2 *Bankruptcy* § 6–61, at 111–12 (1992); *see, e.g., In re Bridge,* 18 F.3d at 200.

■ Insofar as section 544(a) is concerned, and accepting *arguendo* that the debtor has standing to assert in Count II a trustee's strong-arm powers under section 544,[12] "as of the date of the petition's filing, § 544(a)(1) confers upon the trustee the rights of a hypothetical judgment lien creditor; § 544(a)(2) confers upon the trustee the rights of a hypothetical unsatisfied execution creditor; and § 544(a)(3) confers upon the trustee the rights of a bona fide purchaser when, as in this case, real property is at issue." *In re Bridge,* 18 F.3d at 199. "Thus the Bankruptcy Code permits a trustee (and, through sec-

tion 522(h), a debtor) to avoid an obligation if it can be shown that the obligation would not have bound a bona fide purchaser at the time the debtor commenced her bankruptcy action." *McLean v. City of Philadelphia, Water Revenue Bureau,* 891 F.2d 474, 476 (3d Cir.1989).

After accepting all of the plaintiff's factual allegations as true and the reasonable inferences therefrom, if Count II fails to state a cause of action entitling the debtor to any relief, dismissal is warranted. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); *In re Joubert,* 411 F.3d 452 (3d Cir.2005); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *In re Banks,* 214 Fed.Appx. 164 (3d Cir.2007) (non-precedential).

The issue regarding the plausibility of Count II under Fed. R. Bankr.P. 7012 (incorporating, *inter alia,* Fed.R.Civ.P. 12(b)(6)) therefore is whether on October 31, 2008, the date Mr. Best commenced this bankruptcy case, would a bona fide purchaser of the West Allegheny realty from the debtor have been able to defeat or prime the property interest asserted by Messrs. Lange and Galloway, based upon Pennsylvania law. *See 5 Collier on Bankruptcy,* ¶ 544.02, at 544–6 (15th ed. rev. 2008) ("[T]he extent of trustee's rights as a

---

**12.** Courts accept that a chapter 13 debtor can utilize this trustee avoiding power to the extent provided by sections 522(g) and (h), which provisions are concerned with exempt property. *See In re Dyson,* 348 B.R. 314, 318 (Bankr.E.D.Va.2006); *In re Quisenberry,* 295 B.R. 855, 863 (Bankr.N.D.Tex.2003); 5 *Col-*

*lier on Bankruptcy,* ¶ 544.02, at 544–5 (15th ed. rev.2008); see also *In re Hannah,* 316 B.R. 57 (Bankr.D.N.J.2004) (chapter 13 debtor has no standing to raise a claim under section 544(a) outside the scope of sections 522(g) and (h)).

... bona fide purchaser or real property is measured by the substantive law of the jurisdiction governing the property in question.").

Clearly, if Messrs. Lange and Galloway held an unrecorded deed to the property on October 31, 2008, a bona fide purchaser would defeat their interests. *See In re Bella Vista Associates, LLC,* 2007 WL 4555891, at *5 (Bankr.D.N.J.2007) ("Under Pennsylvania law, an equitable interest in property, e.g., an interest held in the form of an unrecorded deed, is valid only as against the defendants.... It is not enforceable against a subsequent bona fide purchaser for value, unless that purchaser had actual or constructive notice of the equitable interest.") (citations omitted); *In re Capital Center Equities,* 137 B.R. 600 (Bankr.E.D.Pa.1992); *In re Nemacolin, Inc.,* 105 B.R. 6 (Bankr.W.D.Pa.1989); *see generally In re Bridge,* 18 F.3d 195 (3d Cir.1994) (applying New Jersey law).

But here, Mr. Best concedes that Messrs. Lange and Galloway had recorded their sheriff's deed to the realty long before he filed his bankruptcy petition. Such recordation would place any bona fide purchaser on constructive notice of their property interest. *See* 21 P.S. § 357 (recording of deed places a party upon constructive notice of property interest); *Mid–State Bank and Trust Co. v. Globalnet Int'l, Inc.,* 557 Pa. 555, 565, 735 A.2d 79 (1999) ("A party is on constructive notice of another's interest in real property where the party 'could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds.'") (quoting *Lund v. Heinrich,* 410 Pa. 341, 346, 189 A.2d 581 (1963)). Indeed, the Third Circuit Court of Appeals observed that:

Pennsylvania law gives subsequent purchasers of real property priority over the rights of prior purchasers if the subsequent purchasers are bona fide purchasers for value without notice. Record notice defeats the claims of a subsequent purchaser.

*McCannon v. Marston,* 679 F.2d 13, 15 (3d Cir.1982); *see also In re Bella Vista Associates, LLC,* 388 B.R. 99, 105 (Bankr. D.N.J.2008) (under Pennsylvania law untimely recordation of a mortgage places a subsequent purchaser on notice and defeats an avoidance claim under section 544).

Thus, where as here the debtor asserts in his amended complaint that the movants recorded their deed to the West Allegheny realty in June 2005, such record notice would defeat the ability of a hypothetical purchaser on October 31, 2008 to claim bona fide status without notice of the prior interest. *See In re Minton Group, Inc.,* 27 B.R. 385, 388 (Bankr.S.D.N.Y.1983) ("A bona fide purchaser is one who would have checked the appropriate recording office for real estate transfers and who would not have learned of any impairment in the transferor's title."). Therefore, the debtor's section 544(a)(3) allegations in Count II fail to state a claim upon which relief can be granted.

Accordingly, an order will be entered dismissing Counts I and II of the debtor/plaintiff's complaint. In addition, an order will remand the movants' state court matter back to state court with the automatic stay again lifted as to both plaintiffs and defendant.

## MEMORANDUM

Presently before me is the motion of the plaintiff/debtor, Ervin J. Best, to "reconsider, vacate and amend order of June 12, 2009 ... dismissing count II of plaintiff's amended complaint...." This motion is

opposed by defendants David A. Galloway and Stephen L. Lange.

Count II of the amended complaint is a claim asserted by the debtor under 11 U.S.C. § 544(a)(3). This claim seeks to avoid a sheriff's deed issued to defendants Galloway and Lange and duly recorded prior to the debtor's bankruptcy filing. I concluded in a memorandum and order dated June 12, 2009 that the debtor failed to state a cause of action thereby warranting dismissal of that claim. The debtor's current motion argues that my earlier analysis "is an incorrect statement of law." Motion, ¶ 4, at 3. The defendants contend that the debtor's proffered legal analysis is wrong, and that he fails to offer any basis for relief under Fed. R. Bankr.P. 9023.

## I.

Federal Rule of Civil Procedure 59(e), incorporated into bankruptcy matters by Fed. R. Bankr. 9023, allows the court to revisit a judgment to correct "manifest errors of law or fact or to present newly discovered evidence." *Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.*, 246 F.Supp.2d 394, 398 (E.D.Pa.2002) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)). Relief under Rule 59(e) is committed to the trial court's discretion. *See Nutrition Management Services Co. v. Harborside Healthcare Corp.*, 181 Fed.Appx. 315, 318 (3d Cir.2006) (non-precedential); *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

A motion under Rule 59(e) may be granted on one of three grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the challenged judgment or order was entered; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See, e.g., Max's Seafood Cafe ex rel. Lou–Ann, Inc.*

*v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995).

Here, as count II was dismissed for failure to state a cause of action, the debtor does not argue that there is newly discovered evidence. Nor does he contend that there has been an intervening change in controlling legal principles. Instead, as noted earlier, he maintains that the earlier dismissal was based upon "clear error of law."

For the following reasons, I agree with defendants Galloway and Lange that my earlier dismissal of count II did not constitute clear error of law.

## II.

As noted in the June 12th memorandum, the following facts pled in the amended complaint are relevant to count II.

On January 19, 1999, Ameriquest Mortgage Company obtained a mortgage on Mr. Best's real property located at 3422 West Allegheny Avenue, Philadelphia, Pennsylvania. That mortgage fell into default, and on July 15, 2004 Ameriquest commenced a foreclosure action in the Philadelphia Court of Common Pleas against the West Allegheny Avenue property. On September 7, 2004, a judgment in foreclosure was entered by default. On December 2, 2004, after entry of the foreclosure judgment, Ameriquest assigned its mortgage (but not its foreclosure judgment, *see generally Trapp v. Laffey*, 349 Pa. 160, 161, 36 A.2d 800 (1944) (judgment assignee proceeds with sheriff sale)) to defendant American Residential Equities XXXXI LLC. That mortgage assignment was then recorded. *But see Lance v. Mann*, 360 Pa. 26, 60 A.2d 35 (1948) (under Pennsylvania law, a mortgage merges into a foreclosure judgment); *In re Stendardo,*

991 F.2d 1089, 1097 (3d Cir.1993) ("The Mortgage ceased to exist when judgment was entered."). Thereafter, American Residential, through its agent Select Portfolio Servicing, sent notices to Mr. Best and communicated with him via telephone. Mr. Best avers that among those communications was a notice informing him of his right to cure his mortgage delinquency within thirty days.

Mr. Best asserts that on March 8, 2005, without prior notice to him, the Sheriff of Philadelphia County conducted a foreclosure sale of the West Allegheny Avenue property based upon Ameriquest's judgment in foreclosure and the writ of execution issued thereupon by the judgment plaintiff.[1] The West Allegheny Avenue property was purchased at this foreclosure sale by Messrs. Galloway and Lange, neither of whom is alleged to have any connection with Ameriquest or American Residential Equities XXXXI LLC. The sheriff then issued a deed dated May 21, 2005, to Messrs. Galloway and Lange, purporting to convey to them title to 3422 West Allegheny Avenue. The movants recorded the deed on June 21, 2005. On October 31, 2008, more than three years after the sheriff's deed was recorded, Mr. Best filed the above-captioned voluntary chapter 13 bankruptcy petition.

The amended complaint raised two counts against defendants Galloway and Lange. In count I of the complaint, Mr. Best sought a declaratory judgment that any interest in the West Allegheny Avenue property claimed by Messrs. Galloway and Lange is invalid—because it is based on a deed that was obtained after a sheriff's

sale that was conducted without authority under Pennsylvania law—and that the realty is therefore property of the debtor's chapter 13 bankruptcy estate. The debtor maintains that because Ameriquest assigned its mortgage to American Residential, only the assignee could authorize a foreclosure sale under Pennsylvania law. Therefore, the sheriff's deed recorded by defendants Galloway and Lange conveyed no property interest of the debtor. Amended Complaint, ¶ 107. *But see Cancilla v. Bondy*, 353 Pa. 249, 251, 44 A.2d 586 (1945) (mortgagee obtains judgment on May 26, 1941, assigns mortgage on July 12, 1941, and proceeds with sheriff sale on September 5, 1941).

For reasons that I will not now repeat, I granted the defendants' request to abstain from adjudicating count I. Litigation raising the same issues as posed in count I is pending before the state court, and had been initiated in 2007.

The debtor's amended complaint expressly denotes that count II is raised only in the alternative. Therein, the debtor requested that this court: "avoid" the defendants' sheriff's deed pursuant to 11 U.S.C. § 544(a)(3); preserve the avoided transfer for the benefit of the estate pursuant to 11 U.S.C. § 551 and for the benefit of the debtor to the extent of his exempt equity pursuant to 11 U.S.C. § 522(i);[2] recover the property pursuant to 11 U.S.C. § 550(a)(1) by compelling Messrs. Galloway and Lange to convey the property to the debtor; and impose a lien on the property in favor of Messrs. Galloway and Lange in the amount of $46,000

1. In its answer to the amended complaint, defendant American Residential Equities asserts that the foreclosure sale occurred on March 1, 2005.

2. Chapter 13 debtors can utilize the trustee's powers under section 544 to the extent pro-

vided by section 522(g) and (h). The latter provisions concern property that can be claimed by the debtor as exempt. *See, e.g., In re Steiner*, 251 B.R. 137, 140 (Bankr.D.Ariz. 2000); 5 *Collier on Bankruptcy*, ¶ 544.02, at 544–5 (15th ed. rev.2008).

(the amount they allegedly paid at the foreclosure sale).

 Section 544(a)(3) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Subsection (a)(3) was added in 1978 by the Bankruptcy Reform Act without significant legislative history. *See* H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 370 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296–97. "As a hypothetical bona fide purchaser, the trustee under this subsection is deemed to have conducted a title search, paid value for the property and perfected its interest as legal title holder as of the date of the commencement of the case." 5 *Collier on Bankruptcy,* ¶ 544.06 (15th ed. rev.2009) (footnote omitted).

 To the extent that the debtor is correct in his contention in count I that the sheriff's deed failed to convey to Messrs. Galloway and Lange any interest in his real estate, because the deed "was void ab initio and a nullity under applicable Pennsylvania law," Debtor's Memorandum, at 1, then count II fails to state a cause of action. Section 544 avoids only prepetition transfers by the debtor of an interest in property. *See, e.g., In re Halabi,* 184 F.3d 1335, 1337 (11th Cir.1999). Therefore, if no property interest of the debtor was conveyed to these two defendants, there can be no transfer to avoid under section 544(a)(3) and no cause of action stated. *See, e.g., id.; In re Seibold,* 351 B.R. 741, 746 (Bankr.D.Id.2006).

Conversely, if the sheriff's sale did indeed convey the debtor's interest in his realty to the defendants, for the reasons that follow section 544(a)(3) does not afford the debtor here any relief.

### III.

 Section 544(a)(3) grants a trustee (and a debtor authorized to use this provision) "as of the date of the petition's filing ... the rights of a bona fide purchaser when, as in this case, real property is at issue." *In re Bridge,* 18 F.3d 195, 199 (3d Cir.1994). Although federal bankruptcy law establishes the bona fide purchaser status of the trustee, the trustee's rights in that capacity are fixed by relevant state law: "the trustee's powers under § 544(a) are subject to the law of the locus of the property." *Id.,* at 200; *see McCannon v. Marston,* 679 F.2d 13, 15–16 (3d Cir.1982).

Thus, application of section 544(a)(3) must consider whether, under Pennsylvania law, a bona fide purchaser of the West Allegheny real estate from the debtor on the date of the debtor's bankruptcy filing would defeat the ownership claim of defendants Lange and Galloway despite the existence of a recorded sheriff's deed in their favor.

In *McCannon v. Marston,* the Third Circuit held that under Pennsylvania common law a bona fide purchaser of real estate does not defeat the property interests of one in open possession of the realty:

[I]n Pennsylvania, clear and open possession of real property generally constitutes constructive notice to subsequent purchasers of the rights of the party in

possession. Such possession, even in the absence of recording, obliges any prospective subsequent purchaser to inquire into the possessor's claimed interests, equitable or legal, in that property. *Id.,* at 16.

 Furthermore, the Third Circuit also instructed that Pennsylvania statutory law provides that "[r]ecord notice defeats the claims of a subsequent purchaser." *Id.* This follows because, pursuant to state law, a purchaser has constructive notice of all properly recorded interests. *See, e.g.,* 21 P.S. § 357[3] (recording of deed places a party upon constructive notice of property interest); *Mid–State Bank and Trust Co. v. Globalnet Int'l, Inc.,* 557 Pa. 555, 565, 735 A.2d 79 (1999) ("A party is on constructive notice of another's interest in real property where the party 'could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect title, and also by what appeared in the appropriate indexes in the office of the recorder of deeds.'") (quoting *Lund v. Heinrich,* 410 Pa. 341, 346, 189 A.2d 581 (1963)); *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.,* 412 Pa.Super. 140, 150, 602 A.2d 1348 (1992). Thus, recordation precludes bona fide purchaser status that would trump the prior recorded interest. *See, e.g., Poffenberger v. Goldstein,* 776 A.2d 1037, 1042 (Pa.Cmwlth.2001); *see generally In re Marlar,* 252 B.R. 743, 753 (8th Cir. BAP 2000) (section 544(a)(3) cannot be used to invalidate a recorded property interest under Arkansas law, even though the property transfer was constructively fraudulent under state law).

 Although a property interest based upon an unrecorded deed may be defeated by a subsequent bona fide purchaser without actual or constructive notice of such interest, *see* 21 P.S. § 351;[4] *Poffenberger v. Goldstein,* 776 A.2d at 1042; *Long John Silver's Inc. v. Fiore,* 255 Pa.Super. 183, 190, 386 A.2d 569 (1978); *see also In re Aulicino,* 400 B.R. 175, 185

---

**3.** 21 P.S. § 357 provides:

The legal effect of the recording of such agreements shall be to give constructive notice to subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements of the fact of the granting of such rights or privileges and/or of the execution of said releases, and the rights of the subsequent purchasers, mortgagees, and/or judgment creditors of the parties to said agreements shall be limited thereby with the same force and effect as if said subsequent purchasers, mortgagees, and/or judgment creditors had actually joined in the execution of the agreement or agreements aforesaid.

**4.** This statutory provision states:

All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

(Bankr.E.D.Pa.2008), in this adversary proceeding, Mr. Best concedes that Messrs. Lange and Galloway had recorded their sheriff's deed to the realty long before he filed his bankruptcy petition. Such recordation, which is not alleged to be defective in that it had been properly signed and acknowledged, would place any bona fide purchaser on constructive notice of their property interest.

Despite this, Mr. Best now argues in the instant motion that the property interests of one who has a duly recorded deed can be defeated by a subsequent bona fide purchaser based upon the post-judgment, pre-sheriff sale mortgage assignment mentioned above. In so arguing, he relies upon five reported decisions. For the reasons detailed below, I find all five decisions inapposite, and further conclude that a bona fide purchaser from the debtor would have no greater right to challenge the ownership interests of these two defendants than the debtor himself now has, owing to the protection Pennsylvania law gives to purchasers at execution sales.

### IV.

■ Pennsylvania's "development of proprietary rules of law relating to sheriff's sales," including the rights of a purchaser at a sheriff sale, "have their roots in a bastion of appellate cases published in the 19th and early 20th Century, but the passage of time has not altered their continued vitality." *Wells Fargo Bank, N.A. v. Long*, 934 A.2d 76, 81 (Pa.Super.2007). As explained by the Pennsylvania Superior Court, such a purchaser receives the property interest held by the judgment defendant, if any:

> A sheriff's sale is made without warranty; the purchaser takes all the risk, and the rule of caveat emptor applies in all its force. *See Taylor v. Bailey*, 323 Pa. 278, 284, 185 A. 699, 702 (1936); *Smith*

*v. Painter*, 5 Serg. & Rawle 223, 224 (1819). The purchaser at such a sale receives all the right, title, and interest in the property that the judgment debtor held, *see Bangor Park Association Case*, 370 Pa. 442, 446, 88 A.2d 769, 772 (1952); *Taylor v. Bailey*, supra at 284, 185 A. at 702; 13 *Standard Pa. Practice 2d* § 73:45 (1983); 22 *id.* § 121:102 (1984), and the rights of the purchaser become fixed when the property is knocked down to the highest bidder. *See Bradley v. Price*, 17 D. & C.2d 368, 372 (1952), *aff'd*, 396 Pa. 234, 152 A.2d 904 (1959); 22 *Standard Pa. Practice 2d* § 121:103. If the debtor had no rights in the property at the time of the sheriff's sale, however, no title passes to the purchaser. *See Bangor Park Association Case, supra* at 446, 88 A.2d at 772; *DiCarlo v. Licini*, 156 Pa. Superior Ct. 363, 367, 40 A.2d 127, 129–30 (1944).

*CSS Corp. v. Sheriff of Chester County*, 352 Pa.Super. 256, 259, 507 A.2d 870 (1986) (footnote omitted).

■ Accordingly, when the judgment debtor has no property interest that can be transferred or subjected to execution, a sheriff sale in Pennsylvania conveys no interest to the purchaser. *See, e.g., Runco v. Ostroski*, 361 Pa. 593, 65 A.2d 399 (1949) (a sheriff sale passed only the one-third property interest then held by the judgment debtor); *Snyder v. Christ*, 39 Pa. 499 (1861) (where the judgment debtor had only a life estate that was not executed upon, the sheriff sale did not divest that property interest); *CSS Corp. v. Sheriff of Chester County*, 352 Pa.Super. at 260, 507 A.2d 870 (property sold at a sheriff sale divested the judgment debtor of all interest; thus, a second sheriff sale did not convey any title to the subsequent purchaser); 13 *Standard Pennsylvania Practice 2d*, § 75:51 (2009).

To the extent that the sheriff's deed does convey the judgment debtor's interest, the purchaser at the sheriff sale may be treated as a bona fide purchaser for value. *See generally* 5 *Tiffany Real Property*, § 1552 (2008). As such, a purchaser at a sheriff sale takes title subject to constructive notice of property interests belonging to third parties not extinguished by the sale under state law. *See Smith v. Miller,* 289 Pa. 184, 189, 137 A. 254 (1927); *Hoyt v. Koons,* 19 Pa. 277 (1852). In general, however,

> the purchaser acquires title free of any defects not apparent on the record, even if the purchaser is the foreclosing mortgagee. A purchaser at a mortgage foreclosure sale takes the property under the state of the record as it exists at the time of the sale, and the purchaser is not required to look beyond the record in determining what he or she will bid nor can he or she take advantage of any fact outside of the record to discharge the land from the lien of the mortgage.

22 *Standard Pennsylvania Practice 2d,* § 121:119 (2009) (footnotes omitted); *see, e.g., Gould v. Saunders,* 134 Pa. 445, 460–61, 19 A. 694 (1890) ("A purchaser at a sheriff's sale of lands sold upon execution to satisfy a judgment is ordinarily charged with the inspection of the record of that judgment and of the execution, and is, in general, affected with notice of any rights which it plainly discloses."); *Murray v. Weigle,* 118 Pa. 159, 164, 11 A. 781 (1888) (even though a mortgage made by a guardian may be invalid, "a purchase[r] at sheriff's sale of the mortgaged premises ... was not bound to look beyond the judgment on the mortgage"); *Armstrong County Building & Loan Ass'n v. Guffey,* 132 Pa.Super. 19, 26, 200 A. 160 (1938) ("A purchaser of real estate at a foreclosure sale acquires a title clear of any defects not apparent on the face of the record even though he is the foreclosing mortgagee.") (citations omitted).

Indeed, by focusing upon the state of the record at the time of a sheriff sale, the Pennsylvania Supreme Court held that satisfaction of the claim of the judgment plaintiff after the sheriff sale occurred but before the deed was recorded did not defeat the purchaser's title:

> But the question here is as to the satisfaction entered on the judgment several months after the sale, but before the acknowledgment of the deed. We think this could not avoid the deed, in the hands of a purchaser from the sheriff's vendee with notice of nothing but the record. What has he to do with the judgment after sale, if there was one upon which it could properly be made when it was made? The moment the land was struck down, the interest of the purchaser attached. The deed is but the legal evidence of the sale, and relates back to the moment it was made: [*Stewart v. Freeman,*] 10 Harris 120 [22 Pa. 120 (1853)]; [*Appeal of Slater*] 4 Casey 169 [28 Pa. 169 (1857)]. If, then, there was authority to make it, that was enough. After that we think the purchaser from Andrews was not bound to look. The expiration of the lien after sale and before deed acknowledged, would not affect the title. And for the same reason, we think, would not the entry of satisfaction affect a purchaser who had notice only from the record, of the fact. As to him, the sale rests upon the authority to make it; and if this existed, it was all he need look to, so far as the judgment was concerned. The record is a safe guide to the purchaser: [*Magaw v. Garrett*] 25 Pa. 319, 1 Casey 319 [(1855)].

*Gibson v. Winslow,* 38 Pa. 49 (1860).

Although the execution purchaser need only look to the record to

evaluate the property interest of judgment defendant, before the sheriff's deed has been delivered Pennsylvania permits any party in interest to seek state court relief to set aside the sale for legal or equitable reasons. Pa. R. Civ. P. 3132; *see Merrill Lynch Mortgage Capital v. Steele,* 859 A.2d 788 (Pa.Super.2004) (bona fide purchaser from judgment debtor prior to sheriff sale set forth valid equitable reasons to set aside the sale). After the sheriff has executed, acknowledged and delivered a deed to the purchaser, however, Pennsylvania common law has long limited setting aside the sheriff sale solely to grounds of "fraud or want of authority to make the sale...." *Knox v. Noggle,* 328 Pa. 302, 304, 196 A. 18 (1938); *see, e.g., North Philadelphia Trust v. Hammond,* 341 Pa. 77, 78, 17 A.2d 881 (1941); *Derr v. New York Joint Stock Land Bank,* 335 Pa. 309, 313–14, 6 A.2d 899 (1939) ("After acknowledgment and delivery of the sheriff's deed, not mere defects and irregularities, however gross, but only fraud in the sale, or want of authority to sell, can defeat the title of the sheriff's vendee...."); 13 *Standard Pennsylvania Practice 2d,* § 76:49 (2009) ("Generally, the sheriff's deed cures irregularities and defects that make an execution sale voidable."). Equitable grounds are insufficient at that stage, *see Garrison v. Erb,* 424 Pa. 306, 227 A.2d 848 (1967), as are issues such as inadequacy of price. *See Knox v. Noggle.*

▮▮▮▮ Thus, a sheriff sale involving real property located outside the county of the sheriff that conducted the sale, therefore occurring without want of authority, can be set aside even after recordation of the deed. *See McLanahan v. Goodman,* 265 Pa. 43, 47, 108 A. 206 (1919). Aside of lack of authority to sell, a leading state-law commentator explains that clear evidence of fraud involving the purchaser is needed to set aside the sale after recordation of the deed. Misconduct by the mortgagee or judgment plaintiff alone does not invalidate the title of the good faith execution purchaser:

> The operation of an execution sale as a means of transmission of title may, in some instances, be frustrated by the presence of fraud in connection with the proceedings, such as where, for example, the execution purchaser is a party to a fraud in connection with the execution sale. The fact that the property was secured by means of fraud for a sum less than otherwise would have been necessary may be a factor in the determination that the purchaser's title was defective.

> The title of the execution purchaser is not affected by fraud to which he or she is not a party and that does not render the proceedings void.

> \* \* \*

> Where misconduct on the part of the successful bidder at an execution sale is deemed to constitute fraud and to preclude the purchaser from acquiring an unimpeachable title to the property, the fraudulent purchaser may under some circumstances be treated as a trustee for those interested in the property. An execution purchaser, however, may not be deemed to be a trustee of the debtor, unless the evidence of such fraud is clear and unequivocal.

13 *Standard Pennsylvania Practice 2d,* § 75:63 (2009) (footnotes omitted); *see also Hoffman v. Strohecker,* 7 Watts 86 (Pa. 1836); 5 *Tiffany Real Property,* § 1552 (2008):

> The general rule is that a bona fide purchaser for value at a judicial sale will be protected although the mortgagee is guilty of fraud and responsible to the mortgagor for whatever damages the mortgagor suffers because of such fraud. A bona fide purchaser at a nonjudicial

foreclosure sale may rely upon the recitals in the deed that the sale was conducted in compliance with all statutory procedures.

(footnotes omitted).

It is apparent in reading the debtor's amended complaint in this proceeding that he is aware of this common law limitation upon a challenge to a sheriff's deed that has been properly recorded. Count I asserts that the sheriff sale occurred without want of authority; it may also allege fraud in connection with the execution process. I leave to the state court its determination of the debtor's objection to the validity of the sheriff's deed held by defendants Galloway and Lange, as raised by count I.

■■■ In considering the validity of count II, although there appears to be no reported decision from Pennsylvania courts so holding, I will assume *arguendo* that an individual obtaining a deed from the debtor purporting to transfer his interest in the West Allegheny Avenue realty on October 31, 2008—the date of his bankruptcy filing—would have standing to challenge the June 2005 sheriff's deed delivered to Messrs. Galloway and Lange, based upon want of authority or fraud. Such a challenge, however, can not result from any bona fide purchaser status. Rather, this transferee would be on constructive notice of the recorded sheriff's deed and thus must proceed solely as assignee of the debtor's interests, with no greater rights than the debtor then had. *See Gould v. Saunders,* 134 Pa. 445, 19 A. 694 (1890) (purchaser at second sheriff sale of realty took subject to the rights of the purchaser of the realty at a prior sheriff sale with an unrecorded deed, because the second purchaser had constructive notice of the first sale); *Hoyt v. Koons,* 19 Pa. 277 (1852) (same); *CSS Corporation v. Sheriff of Chester County,* 352 Pa.Super. 256, 507 A.2d 870 (1986) (second purchaser

had actual notice of the first sale); *cf. In re Young,* 156 B.R. 282, 287 (Bankr.D.Id. 1993) (under Idaho state law, a subsequent bona fide purchaser cannot defeat a prior execution sale purchaser).

■■■ If, as the debtor contends, the sheriff's deed held by the defendants can be set aside by him under state law, a bankruptcy trustee would succeed to the debtor's state law property rights by virtue of sections 541(a) and 558 of the Bankruptcy Code. If the deed conveyed no property interest of the debtor, then such property interest would be part of the debtor's bankruptcy estate. *See generally Perry v. O'Donnell,* 749 F.2d 1346 (9th Cir.1984) (trustee asserts quiet title action based upon an allegedly improper deed in the chain of title); *In re Hixon,* 317 B.R. 771, 774 (8th Cir. BAP 2004) (declaratory judgment action brought by trustee asserting that realty should be considered property of the bankruptcy estate). A bankruptcy trustee's federal status as a hypothetical bona fide purchaser would add no additional rights under Pennsylvania law. Conversely, if, as the defendants maintain, the sheriff's deed was executed with proper authority and without fraud, recordation of the deed would preclude any avoidance of the transfer of the debtor's interest under Pennsylvania law.

This conclusion—that any hypothetical transferee of the real property from the debtor on the date of his bankruptcy filing and after recordation of a validly executed sheriff's deed would be limited to challenging the ownership interests of defendants Galloway and Lange, the two aforementioned grounds already raised by the debtor—renders distinguishable the decisions upon which the debtor now relies in arguing against dismissal of count II.

For example, *In re Johnston,* 2007 U.S. Dist. Lexis 98097 (W.D.Pa.2007), *In re Ev-*

*ans,* 397 B.R. 744 (Bankr.W.D.Pa.2008) and *In re Carnes,* 331 B.R. 229 (Bankr. W.D.Pa.2005) all concerned bankruptcy trustee challenges to the validity of a duly recorded security interest granted by only one spouse on entireties property. In all three instances, the trustee successfully relied upon section 544(a)(3) to invalidate those security interests.

The debtor maintains that these decisions demonstrate that even a duly recorded instrument can be invalidated by a bona fide purchaser under Pennsylvania law. This contention, however, overlooks two important distinctions from the instant count II claim raised in this adversary proceeding.

 Under Pennsylvania law, "[w]hen property in Pennsylvania is owned by husband and wife, title is held as tenants by entireties." *Stop 35, Inc. v. Haines,* 374 Pa.Super. 604, 610, 543 A.2d 1133 (1988). Property that is owned by the entireties is not owned by either spouse; rather, it is owned by the marital unit. *See, e.g., Lindenfelser v. Lindenfelser,* 396 Pa. 530, 534, 153 A.2d 901 (1959). Thus, in Pennsylvania, a creditor of only one spouse cannot execute on property owned as tenants by the entireties, because the marital unit itself is not the obligor. *See, e.g., Napotnik v. Equibank and Parkvale Sav. Ass'n,* 679 F.2d 316, 319 (3d Cir.1982). Accordingly, a mortgage instrument executed only by one spouse does not encumber entireties property, even if it is duly recorded. *See In re Farris,* 194 B.R. 931 (Bankr.E.D.Pa.1996). Furthermore, such a defect would be actually or constructively known to any subsequent purchaser from both spouses, based upon the chain of title and interests found in the recorded instruments.

 Pennsylvania common law provides that a tenancy by the entireties is terminated upon divorce, the death of one spouse, or joint conveyance by both spouses. *See, e.g., Plastipak Packaging, Inc. v. DePasquale,* 937 A.2d 1106, 1112 (Pa.Super.2007). "A tenancy by the entireties includes the right of survivorship; upon the death of one spouse the survivor becomes the sole owner of the entireties property." *Fazekas v. Fazekas,* 737 A.2d 1262, 1263 n. 1 (Pa.Super.1999). This right of survivorship is an inchoate property interest that can be encumbered. *See, e.g., Fleek v. Zillhaver,* 117 Pa. 213, 12 A. 420 (1887); *A. Hupfel's Sons v. Getty,* 299 F. 939, 939–40 (3d Cir.1924); *In re Bilinski,* 1998 WL 721083 (E.D.Pa.1998). Accordingly, a mortgage provided by only one spouse does not encumber the entireties realty, but is valid against the mortgagor as encumbering his right of survivorship. That right of survivorship, however, is terminated if both spouses transfer ownership of the entireties property to a third party:

> Since property owned by tenants by the entireties is not subject to the debts of either spouse they may alien it without infringing upon the rights of their individual creditors; all claims of the latter, even though reduced to judgment, are subject to extinction in the event of the alienation of the estate by the joint act of the owners.

*Murphey v. C.I.T. Corp.,* 347 Pa. 591, 594, 33 A.2d 16 (1943); *see, e.g., Plastipak Packaging, Inc. v. DePasquale,* 937 A.2d at 1112.

 Therefore, when, as in *In re Evans* and *In re Carnes,* both spouses file a joint chapter 7 petition, a bankruptcy trustee can elect to take the role of a bona fide purchaser from both debtors by virtue of section 544(a)(3). And in that role, the recorded mortgage interest provided prepetition by only one spouse would not be constructive notice of a lien on entireties

property and so would be defeated under state law by the hypothetical transfer to the trustee.[5]

Similarly, *In re Fisher*, 320 B.R. 52 (E.D.Pa.2005) and *In re Zaptocky*, 232 B.R. 76 (6th Cir. BAP 1999) concerned challenges to recorded mortgage instruments that contained defects under relevant state law recording statutes. In *Zaptocky*, the instrument was not properly witnessed. In *Fisher*, the mortgage, *inter alia*, was fraudulently acknowledged by the mortgagee. In both instances, those courts concluded that relevant state law rendered the mortgages as effective against the mortgagors but ineffective against a subsequent bona fide purchaser because, although the mortgage was duly recorded, state law prevented it from constituting constructive notice of the property interest against good faith purchasers.[6]

In this adversary proceeding, the plaintiff does not allege that the defendants' sheriff's deed failed to comport with Pennsylvania's recording requirements. Nor does he argue that the sheriff's deed, while valid against him, is invalid against good faith transferees. All five decisions cited by the debtor in support of count II contain a common theme: section 544(a)(3) is used to avoid a transfer of the debtor's real property interest that the debtor himself could not invalidate under relevant non-bankruptcy law and whose recordation was found not to constitute constructive notice to a bona fide purchaser. Accordingly, these decisions are not relevant to the present litigation.

## V.

In sum, the Pennsylvania state court will determine whether the debtor, in count I, can invalidate a duly recorded prepetition sheriff's deed, applying its common law restrictions. The debtor's alternative contention in count II—that if the sheriff's deed cannot be set aside because it was non-fraudulent and executed with proper authority, it can still be invalidated by a subsequent bona fide purchaser—is incorrect as a matter of state law.

Therefore, the debtor's argument in the instant motion, that my earlier dismissal of count II for failure to state a cause of action was clear error, is unpersuasive. An appropriate order shall be entered de-

---

**5.** *In re Johnston* concerned the bankruptcy filing of only one spouse, not both; moreover, the filing spouse had executed the mortgage. Section 544(a)(3) treats the trustee as the hypothetical purchaser of only the debtor's interest in real property at the time of the bankruptcy filing. When the property is owned by the entireties, a purchaser from one spouse does not take title to the property under Pennsylvania law.

**6.** Whether these courts correctly interpreted relevant state law I need not decide in order to address the debtor's instant motion.

Courts have been reasonably consistent in finding that an improperly recorded instrument whose defect is apparent on the face of the instrument does not provide constructive notice of any property interest to a subsequent bona fide purchaser, and so can be avoided under section 544(a)(3). *See, e.g., In re Ryan*, 851 F.2d 502 (1st Cir.1988); *In re Fleeman*, 81 B.R. 160 (Bankr.M.D.Ga.1987). When the defect is not apparent from the recorded instrument itself, or from other instruments of record, some courts have held that relevant state law would still treat the challenged instrument as providing constructive notice, thereby defeating an avoidance claim under section 544(a)(3). *See, e.g., In re Casbeer*, 793 F.2d 1436 (5th Cir.1986); *see also Scott v. Penn Title Insurance Co.*, 10 Pa. D. & C.2d 129 (C.P., Berks Co.1957).

Both *Fisher* and *Zaptocky* construed state law as invalidating recorded instruments whose defects (aside from a delay in recordation in *Fisher*) would not be apparent to third parties from the face of those instruments.

nying his motion to reconsider, vacate or amend the June 12th order.